JOHN LLOYD, PLAINTIFF IN ERROR *vs.* CHARLES SCOTT, BAILIFF OF WILLIAM S. MOORE, DEFENDANT.

S. being seised in fee of four brick tenements and lots of ground in Alexandria, in consideration of five thousand dollars, granted to M. an annuity or yearly rent charge of five hundred dollars, to be issuing out of and charged upon the houses and ground, and covenanted that the same should be paid to M., his heirs and assigns for ever thereafter, with the right to distrain in case of non-payment of the same. In the deed granting the rent charge, M. the grantee, covenanted, that at any time after five years, on the payment of five thou-sand dollars with all arrears of rent, he, M., would release the said rent charge, and the same should cease. S. covenanted to keep the buildings in repair, and that he would have them fully insured against fire, and assign the policy of insurance for the protection of M., the money from the insurance to be ap-plied to the rebuilding or repairing the houses, if destroyed or injured by fire. Afterwards, S. by deed of bargain and sale, conveyed to L., the plaintiff in error, the houses and lots of ground subject to the payment of the rent to M., who since the same conveyance has been seised of the same. The rent being unpaid, M. levied a distress for the same, and L. brought replevin; and the de-fence to the claim for rent set up to the avowry was, that the transaction was usurious, and the deed granting the rent charge was, by the laws of Virginia, absolutely void.

The statute of Virginia, of 1793, provides that no person shall take, directly or indirectly, more than six per cent per annum on loans of money or for forbear-ance for one year; and it declares that all bonds and other instruments for a greater amount of interest shall be utterly void. [223]

The requisites to form an usurious transaction are, 1. A loan either express or implied. 2. An understanding that the money lent shall or may be returned. 3. That a greater rate of interest than is allowed by the statute shall be paid. The intent with which the act is done, is an important ingredient to constitute this offence. [224]

An ignorance of the law will not protect a party from the penalties of usury, where it is committed; but where there was no intention to evade the law, and the facts which amount to usury, whether they appear upon the face of the contract or by other proof, can be shown to have been the result of mis-take or accident, no penalty attaches. [224]

The act of usury has long since lost that deep moral stain which was formerly attached to it; and is now generally considered only as an illegal or immoral act, because it is prohibited by law. [224]

If the court were in this case limited by the pleas to the words of the contract, and it purported to be a purchase of an annuity, and no evidence were adduced giving a different character to the transaction; the argument, that though the annuity may produce a higher rate of interest than six per cent upon the con-sideration paid for it, as it was a purchase, it was legal, be unanswerable. An annuity may be purchased like a tract of land or other prop and the

[Lloyd vs. Scott.]

inequality of price will not of itself make the contract usurious. If the inadequacy of consideration be great in any purchase, it may lead to suspicion; and connected with other circumstances, may induce a court of chancery to relieve against the contract.  [225]

In this case five thousand dollars were paid for a ground rent of five hundred dollars per annum. This circumstance, although ten per cent be received on the money paid, does not make the contract unlawful. If it were a bona fide purchase of an annuity, there is an end of the question; and the condition which gives the option to the vendor to repurchase the rent, by paying the five thousand dollars after the lapse of five years, would not invalidate the contract. The right to repurchase, as also the inadequacy of price, would be circumstances for the consideration of a jury.  [225]

The purchase of an annuity, or any other device, used to cover an usurious transaction, will be unavailing. If the contract be infected with usury, it cannot be enforced.  [226].

If a party agree to pay a specific sum, exceeding the lawful interest, provided he do not pay the principal by a day certain, it is not usury. By a punctual payment of the principal, he may avoid the payment of the sum stated, which is considered as a penalty. Where a loan is made, to be returned at a fixed day, with more than the legal rate of interest, depending on a casualty, which hazards both principal and interest, the contract is not usurious; but where the interest only is hazarded, it is usury.  [226]

All the material facts to constitute usury are found in the second plea. It states a corrupt agreement to loan the money at a higher rate of interest than the law allows. That the money was advanced, and the contract executed in pursuance of such agreement. That on the return of the principal with the full payment of the rent, after the lapse of five years, the annuity was to be released. The amount agreed to be paid above the legal interest for the forbearance, is not expressly averred, but the facts are so stated in the plea as to show the amount with certainty. Five hundred dollars, under cover of the annuity, were to be paid annually for the forbearance of the five thousand dollars; making an annual interest of ten per cent. Do not these facts, uncontradicted as they are, amount to usury? Is it not evident from this statement of the case, that the annuity was created as a means for paying the interest until the principal should be returned, and as a disguise for the transaction. Such is the legitimate inference which arises from the facts stated in the plea.  [227]

The principle seems to be settled, that usurious securities are not only void, as between the original parties, but the illegality of their inception affects them even in the hands of third persons, who are entire strangers to the transactions. A stranger must "take heed to his assurance at his peril;" and cannot insist on his ignorance of the corrupt contract, in support of his claim to recover upon a security which originated in usury.  [228]

In the case of D'Wolfe vs. Johnson, 10 Wheat. 367, the first mortgage being executed in Rhode Island in 1815, was not usurious by the laws of that state; and the second mortgage executed in Kentucky, in 1817, being a new contract, was not tainted with usury. The question, therefore, whether the purchaser of an equity of redemption can show usury in the mortgage to defeat a foreclosure, was not involved in that case.  [229]

The law of Virginia having declared that a contract infected by usury is void, and by the deed from S. to M., a right to enter on the premises and distrain for the

[Lloyd *vs.* Scott.]

rent is claimed under a deed, which, upon the admissions in the pleadings, is usurious; the premises upon which the distress was made, being held by L, under a conveyance from S.; L. may set up the defence of usury in the deed, against the summary remedy asserted by M. under the deed. [230]

This case came before the court on a judgment in the circuit court, for the defendant, the avowant in replevin, he having demurred to the pleas of the plaintiff in an action of replevin. The court having reversed the judgment of the circuit court, remanded the cause, with instructions to the circuit court to overrule the demurrer, and permit the defendant, the avowant, to plead. [231]

THIS was an action of replevin brought by the plaintiff to replevy certain goods and chattels which the defendant, as bailiff of William S. Moore, had taken upon a distress for rent claimed by the said Moore to be due upon certain houses and lots in Alexandria, owned and held by the plaintiff. The sum for which distress was made is five hundred dollars. The declaration is in the usual form; and the damages claimed one thousand dollars.

The defendant filed his cognizance, in which he acknowledges the taking of the goods, &c. in the declaration mentioned, and states that a certain Jonathan Scholfield was seised in fee of four brick tenements and a lot of ground in the town of Alexandria, and being so seised, he by his indenture, dated the 11th of June 1814, of which deed profert is made, in consideration of five thousand dollars, by the said William S. Moore paid to him the said Jonathan Scholfield, he granted, bargained and sold to him, the said William S. Moore, one certain annuity or yearly rent of five hundred dollars, to be issuing out of and charged upon the said four brick tenements and lot of ground, to be paid to the said William S. Moore, his heirs and assigns, by equal half yearly payments of two hundred and fifty dollars each, on the tenth of December and on the tenth of June in each year for ever thereafter. To have and to hold the said annuity or rent charged and payable as aforesaid, to the said William S. Moore, his heirs and assigns, to his and their only proper use for ever. It also states that the said Jonathan Scholfield, for himself, his heirs and assigns, did, by the said indenture, among other things, covenant with the said William S. Moore, his heirs and assigns, that he, the said

[Lloyd vs. Scott.]

Scholfield, his heirs and assigns, would well and truly pay and satisfy to him, the said Moore, his heirs and assigns, the said annual rent of five hundred dollars by equal half yearly payments for ever : and if the rent should not be paid as it became due, that on every default it should be lawful for the said Moore, his heirs and assigns, to make distress for it. That the said William S. Moore was seised of the said rent on the said 11th of December 1814, and has since remained seised thereof.

The cognizance further states, that on the 29th of October 1816, the said Jonathan Scholfield, by his deed of bargain and sale, conveyed to the said John Lloyd the plaintiff, for ever, certain enements and lots of ground in the said town of Alexandria, whereof the said four brick tenements and lot of ground before mentioned, on which the said distress was made, was parcel; subject, by the terms of the said deeds, to the payment of the said annuity or rent of five hundred dollars to the said William S. Moore, his heirs and assigns. That the said John Lloyd has been ever since seised and possessed of the same ; and that on the 10th of June 1824, two hundred and fifty dollars, a part of the said rent was due, and on the 10th of December 1824, two hundred and fifty dollars, the balance of the said annual rent, was due and unpaid to the said William S. Moore, for which said sum of five hundred dollars, the said defendant, as bailiff aforesaid, levied a distress. It concludes by praying judgment for one thousand dollars, being double the rent in arrear and distrained for.

By the deed from Scholfield to Moore, he, Moore, for himself and his heirs and assigns, covenants with Scholfield, his heirs and assigns, that if he, the said Scholfield, his heirs or assigns " shall at any any time after the expiration of five years from the date of the deed, pay to the said Moore, his heirs or assigns, the sum of five thousand dollars, together with all arrears of rent and a rateable dividend of the rent for the time which shall have elapsed between the half year day then next preceding and the day on which such payment shall be made, he, the said Moore, his heirs and assigns, will execute and deliver any deeds or instruments which may

[Lloyd vs. Scott.]

be necessary for releasing and extinguishing the rent or annuity hereby created, which, on such payments being made, shall for ever after cease to be payable."

By the same deed Jonathan Scholfield covenants that he was then in his own right seised in fee simple of the premises charged as aforesaid, free from any condition or incumbrance other than which is specified and provided for in a deed from him, Scholfield, to Robert I. Taylor, dated the day before the date of the deed to Moore.

The said Scholfield further covenants for himself, his heirs and assigns, that he " will for ever hereafter keep the buildings which now are, or hereafter may be erected on the premises charged, fully insured against fire in some incorporated insurance office, and will assign the policies of insurance to such trustee as the said Moore, his heirs or assigns may appoint, to the intent that if any damage or destruction from fire shall happen, the moneys received on such policies may be applied to rebuilding or repairing the buildings destroyed or damaged."  There is also a covenant on the part of Scholfield, for a further conveyance to carry into effect the intention of the parties; and also a warranty on his part, to warrant and defend the said annuity or rent, to the said Moore, his heirs or assigns, against any defalcations or deductions for or on account of him the said Scholfield, his heirs or assigns.

To this cognizance, the plaintiff, after praying oyer of the indenture from Scholfield to Moore, demurred specially; and assigned the following causes :

1. Because the deed of indenture from Jonathan Scholfield and Eleanor his wife to William S. Moore, in the said cognizance mentioned, shows upon the face of it a corrupt and usurious contract between Jonathan Scholfield and William S. Moore, altogether void in law, and entirely incompetent to justify the taking of the said goods and chattels in the plaintiff's declaration mentioned.

2. Because the essential parts of the indenture are not set forth in the cognizance.

3. Because the indenture is variant, and different from that alleged in the cognizance.

[Lloyd vs. Scott.]

4. Because the whole cognizance is void and insufficient in law to justify the taking of the goods and chattels in the declaration mentioned.

At the same time the plaintiff filed four pleas. In each of which pleas he craves oyer of the deed of indenture in the cognizance mentioned, which was granted to him.

The first plea states, that before the making of the indenture, that is to say, on the 11th of June 1814, it was corruptly agreed between Scholfield and Moore, that he, Moore, should "advance" to Scholfield, the sum of five thousand dollars, and in consideration thereof, that Scholfield and his wife should grant, by a deed of indenture, duly executed and delivered to Moore, his heirs and assigns for ever, a certain annuity or yearly rent of five hundred dollars, to be issuing out of and charged upon a lot of ground, and four brick tenements and appurtenances thereon, which lot is particularly described in the said plea, and stated to be in the town of Alexandria : which annuity or rent of five hundred dollars was to be paid to Moore, his heirs and assigns, by equal half-yearly payments of two hundred and fifty dollars, on the 10th of December and on the 10th of June for ever thereafter. It was further corruptly agreed, that he, Scholfield, in and by the deed, should bind himself, his heirs, executors, administrators and assigns to Moore, his heirs and assigns, that Scholfield would well and truly pay to him, Moore, his heirs and assigns, the said rent or annuity of five hundred dollars, by equal half yearly payments, on the 10th of June and the 10th of December in each year for ever thereafter, as it became due. It further states, if the same should not be paid as it became due, the right of distress for it is reserved to Moore, his heirs and assigns. The plea also states, if sufficient property could not be found on the premises to make the said rent or annuity, after the expiration of thirty days from the time the same became due, it should be lawful for Moore to enter on the premises, and to remove Scholfield, his heirs and assigns, and for him, Moore, his heirs or assigns, to possess and hold the same as his or their property.

The plea further states, that it was corruptly agreed be-

[Lloyd *vs*. Scott.]

tween Scholfield and Moore, that he, Scholfield, should further covenant in the said indenture, that he, Scolfield, was seised at the time of making the deed in his own right, in fee simple in the premises, free from any condition or incumbrance other than such as was specified in a deed from him to Robert I. Taylor; and that he would thereafter keep the buildings fully insured in some incorporated insurance office, and assign the policies to such trustee as Moore, his heirs or assigns should appoint; and that he would make any other deed for a further assurance of the title to the premises; and that he would warrant and defend the title of Moore to the rent or annuity. It is also stated in said plea, that Moore did further corruptly agree, that he would, in the indenture, covenant for himself, his heirs or assigns, with Scholfield, his heirs and assigns, that if he, Scholfield, his heirs or assigns, should at any time thereafter, at the expiration of five years from the date of the indenture, pay to Moore, his heirs or assigns, the sum of five thousand dollars, together with all arrears of rent, and a rateable dividend of the rent for the time which should have elapsed between the half year's day then next preceding, and the day on which such payment should be made, he, Moore, his heirs and assigns, would execute and deliver any deeds or instruments which might be necessary for releasing and extinguishing the rent or annuity.

The plea then avers, that on the 11th of June 1814, in pursuance and in prosecution of this corrupt agreement, William S. Moore did advance to Jonathan Scholfield, the sum of five thousand dollars, and that Scholfield and his wife, and William S. Moore did make, seal and duly deliver to each other respectively the said deed as their act and deed, which was duly acknowledged and recorded; that the deed was made in consideration of money advanced upon and for usury; and that there has been reserved and taken above the rate of six dollars in the hundred, for the forbearance of the sum of five thousand dollars, so advanced as aforesaid, for the term of one year. The plea concludes with a verification, and prays judgment for damages for the unjust taking and detention of the goods, &c.

The second plea is in all respects like the first, except it states that the agreement was, that Moore should " lend" to Scholfield five thousand dollars. It then states that the parties agreed a deed should be made containing all the covenants set forth in the first plea. It then avers that in pursuance and in prosecution of this corrupt agreement, Moore did advance to Scholfield, the sum of five thousand dollars; and that Scholfield and wife, and Moore, made and executed the deed aforesaid, in pursuance of this corrupt agreement, which was duly acknowledged and admitted to record. And that the deed was made in consideration of " money lent upon and for usury :" and that by it there has been reserved and taken above the rate of six dollars in the hundred, for the forbearance of the sum of five thousand dollars so lent as aforesaid, for the term of one year. This plea concludes as the first does.

The third plea is more general than the first and second. It states, that before the making of the indenture, that is to say, on the 11th of June 1814, it was corruptly agreed between Scholfield and Moore, that he, Moore, should " advance" to him, Scholfield, the sum of five thousand dollars, upon the terms and conditions, and in consideration of the covenants and agreements in the indenture mentioned and contained; and that in pursuance of this corrupt agreement, and in the prosecution and fulfilment of the same, Moore did advance to Scholfield the sum of five thousand dollars, and they, Scholfield and Moore, did make, seal, and duly deliver the deed to each party respectively, as their act and deed. And that the deed was in consideration of money advanced upon and for usury, and that by the indenture there has been taken and reserved above the rate of six dollars in one hundred, for the forbearance of the sum of five thousand dollars, so advanced as aforesaid for the term of one year. This plea concludes as the first does.

The fourth plea is like the third, except it is stated that the agreement was to " lend" five thousand dollars upon the same terms stated in the third plea. It then avers, that in pursuance and in execution of the corrupt agreement in the indenture mentioned, Moore did " lend" to Scholfield the

[Lloyd vs. Scott.]

sum of five thousand dollars; that the deed was duly executed by the parties and recorded; that it was made in consideration of money lent upon and for usury, and that by the said deed there has been reserved and taken above the rate of six dollars in the hundred for the forbearance of the sum of five, thousand dollars, so lent as aforesaid, for the term of one year. This plea concludes as the others do.

To each of these pleas the defendant demurred specially, and assigned for causes:

1. That the said pleas do not set forth with any reasonable certainty the pretended contract which is alleged to have been usurious, and do not show an usurious contract.

2. That they do not state the time for which the said pretended loan was made.

3. That they do not state the amount of interest reserved or intended to be reserved on the said pretended contract.

4. That they do not set forth any loan or forbearance of any debt.

5. That they neither admit nor deny the sale and conveyance of the premises charged with the said annuity or rent, to have been made by Jonathan Scholfield to the plaintiff.

Upon the demurrer to the cognizance, and on the demurrer to the pleas, the circuit court rendered judgment for the defendant for one thousand dollars, the double rent claimed in the cognizance, and costs.

The plaintiff sued out this writ of error, and before this court assigned for error,

1. That the deed which forms a part of the cognizance is on its face usurious.

2. That the pleas set forth, with sufficient certainty, a spurious contract.

The case was argued by Mr E. J. Lee and Mr Swann, for the plaintiff in error; and by Mr Jones and Mr Taylor, for the defendant.

For the plaintiff, it was contended; that the deed of Scholfield to Moore, of the 11th of June 1814, was a contract to pay five hundred dollars per annum, for five years, for the use of five thousand dollars, which is equal to ten

per cent per annum. The object of this device. was to evade the statute against . usury. The deed does not set forth the purchase of an annuity ; but Scholfield being seised of. the property in fee, receives five thousand dollars from Moore as a loan, and then grants to Moore a rent of five hundred dollars per annum, for the . use of the money. The stipulations in the deed are to pay the rent half yearly, for five years ; not to redeem the property by paying the five thousand dollars; and after that time, on his continuing to pay the five hundred dollars, the property is to remain charged with the same. The deed gives a right of distress and entry on the premises, and stipulates that the property shall be kept in repair, and the buildings insured at the expense of Scholfield and his assigns. If any of the houses shall be destroyed by fire, they are to be rebuilt, and there is a covenant for the payment of the rent against any defalcations or deductions by Scholfield. The whole sum payable by Scholfield in five years for interest, insurance, taxes and repairs, including the five thousand dollars, would amount to eight thousand seven hundred and fifty dollars ; a large excess beyond legal interest.

There must have been great distress to induce such a contract ; and upon its face it exhibits all the features of usury ; although there is no stipulation which plainly expresses the contract to be one of mere loan, with a compensation for forbearance beyond what is lawful.

It is not necessary that it should appear on the face of the deed that it was a loan or forbearance. If this is the result, it will authorise the application of the statute.

To show that the transaction on the face of the deed, though it assumes the form of a ground rent, is a usurious contract, cited, 1 Inst. book 3, sec. 534. 5 Co. Rep. 69, Lawley *vs.* Hooper, 3 Atk. 278. Flayer *vs.* Sir Brownlaw Sherard, Ambler, 19. 3 Barn. & Ald. 664. 4 Camp. Rep. 1. Powel *vs.* Waters, 17 Johns. Rep. 176. 5 Randolph's Rep. 347. Barnard *vs.* Young, 17 Ves. 44.

The preceding cases show, that where there is a covenant either on the part of him who advances the money to accept of repayment, or of the borrower to repay it ; or where

the right to repay the money is reserved by the contract; that the money was advanced as a loan, and a contract entered into for its repayment, it is usurious.

But if it is urged, that this is a contract for the sale of a rent charge: the answer is, that at the time the contract was made no rent existed. It is an original grant of an annual rent to be issuing out of, and to be charged on certain houses.

Technically, an annuity is not a ground rent. 2 Blac. Com. 41, 461. Co. Lit. 144.

Is the usury properly pleaded?

It is said that the contract is not set forth with reasonable certainty in the pleas. But the pleas bring out the whole deed in which the contract is shown; and thus the defendant is fully informed what that contract is, upon which the allegation of usury arises.

An indenture set out upon oyer, becomes a part of the plea. 1 Chitty, 664. By becoming a part of the plea, they set out the contract, and by so doing the defendant is informed of what he is to answer.

It is admitted, that in a plea of usury, it is necessary to set out the facts with such certainty, as that they can be understood by the party to answer them, by the jury who are to ascertain them, and by the court who are to give judgment upon them. 1 Chitty's Plead. 236, 237. All these objects are fully obtained by the pleas filed in this case.

The second objection is, that the pleas do not show a usurious contract. It is submitted to the court that the deed does show that five thousand dollars were paid, not for an existing ground rent, but that Scholfield was to pay for five years certain, five hundred dollars per annum, for the use of that sum. The facts, as has been alleged, show this intention, and the desire of the parties to conceal it, and give it the appearance of the purchase of an annuity or rent charge.

If the document produced by the plaintiff as his cause of action, exhibits such facts as would if pleaded show a loan; then the defendant need not prove that the money advanced to him was a loan, nor need he prove by other evidence than the deed that the loan was mentioned by the lender

[Lloyd *vs.* Scott.]

before the making of the contract, in the form in which it was executed. Usury is a question of law; and if all the facts which go to show the intent of the parties, appear by the showing of the plaintiff, by a special verdict or otherwise, it is sufficient. It is not necessary to state in the pleadings, or that the jury should find them, that there was a corrupt agreement. It is sufficient if facts appear which in law amount to usury. Roberts *vs.* Tremayne, Cro. James, 508. 1 Call, 62. Price *vs.* Campbell, 2 Call, 119. The intention of the parties is a legal inference from established facts. 5 Randolph, 145, 146 to 162. Whitworth *vs.* Adams, 5 Rand. 352, 560. 4 Mun. 66. 6 Cranch, 652.

The facts set forth by the deed, which forms a part of the pleas, according to the cases cited, show an usurious contract. The first plea states an advance of five thousand dollars for five hundred to be paid annually. Scholfield could not release himself from the payment of the sum for five years. The plea states that this advance was made, and the deed executed in pursuance of this *corrupt* agreement, and that the five thousand dollars were advanced upon and for *usury*, and that there had been thus reserved and taken by Moore above the rate of six per cent for forbearance of five thousand dollars for the term of one year. All this is admitted by the demurrer.

The second plea states this as *lent*. The third plea states the sum to have been *advanced* upon the agreement stated in the first plea; and the fourth is general, and states the sum as *lent*. The demurrer admits the money to have been *lent* and *advanced* as stated in the pleas.

The second objection to the pleas is, that they do not state the *time* for which the loan was made. This is immaterial; as the pleas state that five hundred dollars are to be paid each year for the forbearance of five thousand dollars.

The plea expressly states that above the rate of six per cent in the hundred dollars, for the forbearance of five thousand dollars, is reserved; and by making the deed a part of it, does state the forbearance to be for five years certain, and as long after as Scholfield pleased, or as his inability to return the money continued. The answer to the third objection is

of the same character; the deed shows the amount of interest reserved, and to be paid. It is expressly stated to be more than legal interest. To this point see 3 Term Rep. 533. 4 Term Rep. 353. 6 Rand. 661.

But in this case the party to the contract is not before the court, and he is not bound to set forth the usurious contract, as those are who were the immediate parties to it. Hill vs. Montague, 2 Maule & Selw. 377.

The plaintiff in the replevin is not a party to this usurious contract. The defendant claims to make him liable to pay five hundred dollars, by distraining his goods and chattels found on the premises charged by the contract between him and Scholfield; he is therefore a stranger to the particulars of the agreement, and he puts in the plea of usury. Less certainty is required when the law presumes that the knowledge of the facts is particularly in the opposite party. 1 Chitty, Plead. 258. 13 East's Rep. 112. Com. Dig. Plead. c. 626.

The fourth objection is, that no loan or forbearance is set forth in the pleas. It is true the term *loan* is not used; but it is said the money was *advanced*, and that he was to receive five hundred dollars as a ground rent annually for five years for the advance; and that it was *lent*, and that Moore did *lend* five thousand dollars to Scholfield, for which he was to pay him five hundred dollars per year. The pleas all state that for the forbearance of the sum of five thousand dollars so advanced and lent, above the rate of six dollars in the hundred for one year was reserved and taken.

The fifth objection is, that the pleas neither admit nor deny the sale by Scholfield to the plaintiff of the premises charged with the rent.

This is not material. If it was admitted that the sale was made by Scholfield to Lloyd charged with the annuity or ground rent claimed by the avowant, under a contract which in law is usurious and therefore void; the plaintiff could not be compelled to pay, in the form of a rent, the usurious interest reserved by this contract.

The cause of demurrer was probably suggested by the case of D'Wolf vs. Johnson and others, 10 Wheat. 367. It is contended, that the principles involved and decided in

[Lloyd vs. Scott.]

that case do not apply to the case now before the court. The decision in that case rested mainly on the fact that the contract originally made was not usurious by the law of Rhode Island. The case before the court is one, where the defendant seeks in the form of a distress for rent to make the personal property of the plaintiff liable under a contract which is usurious and void at law; and the question is, whether the defendant can avail himself of such a contract?

A party, in whose favour a contract which is usurious has been made, cannot make use of it for any purpose whatever. Barnard vs. Young, 17 Ves. 44. 1 Starkies's Rep. 385. Comyn on Usury, 175. Whitworth vs. Adams. 5 Rand. 356. Harrison vs. Hammill, 5 Taunt. 780. Gaither vs. The Farmer's Bank of Georgetown, 1 Peters's Rep. 37. Jackson vs. Henry, 10 Johns. 195.

Mr Taylor and Mr Jones, for the defendants in error.

The pleas do not any where charge a loan to have been made on an usurious contract: it is only stated, "and so the money was loaned upon usury." The charge of usury is a mere deduction from facts. The pleas state no collateral agreement as to a loan, and the whole of the contract is that which is contained in the deed. The deed in itself contains no contract which is usurious. It is a contract to pay the sum of five hundred dollars per annum, in half yearly payments, for five years certain; and after that time, the payment of five thousand dollars will be an extinguishment of the obligation, and a restoration of the property which is given to secure the payment. It is one thing to decide upon this contract as contained in the deeds, other to decide on a collateral statement of usury.

The first question is, whether Lloyd can avail himself of this usury, if it existed?

He is bound by a contract with his vendor Scholfield; he is bound to pay this annuity to Moore, and it is important to Scholfield that he shall do so; as he, Scholfield, is under a personal contract to pay the same.

A deed is not void for usury; it is only voidable; as all deeds which take effect from delivery are not void; and

[Lloyd *vs.* Scott.]

must be made so by pleading. 3 Burr. 1804. Bull. Nisi Prius. 224. 5 Co. 119.

As this contract is only voidable, who can avoid it? can any one do it? Certainly not a stranger.

By a reference to the usury act of Virginia, which is very full, its whole object will be seen to be to protect the parties to the contract. The spirit and objects of it do not extend to other parties. By the third and fourth sections, the relief in equity is confined to the borrower. He may go into chancery, and recover the money lent, and the interest; but if Lloyd recovers in this case, if he escapes the payment of the rent, Scholfield will lose the money given to him; he cannot afterwards recover from Moore.

Lloyd is not here a stranger; but he was acquainted with the facts and is bound to pay the rent. He cannot set up a plea of usury, which injures his vendor. He is estopped by his purchase from so doing.

The law of usury is different in cases of personal and real property. The assignee of an equity of redemption cannot plead usury in the mortgage; and a purchaser under a mortgage is not affected by usury in the origin of the contract. 10 Wheat. 367. 10 Johns. Rep. 185. A mortgage upon an usurious consideration is void only against the mortgagor, and those who may lawfully hold the estate under him. A purchaser of the mere equity of redemption, cannot avoid the mortgage by plea or proof of usury. 13 Mass. Rep. 515. Is it competent for an intruder to set up a title? or for a tenant at will to contradict the title of his landlord? A tenant in possession cannot set up usury against the title of his landlord. Idiocy and lunacy may be avoided by the parties, but not by strangers; and these rules will fully apply to other deeds. 8 Term Rep. 390. 4 Co. 123. 8 Co. 42. Co. Lit. 271 (*a*).

This transaction does not constitute a usurious contract. To such a contract the obligation to repay the money is essential. Ord on Usury, 23. If the money may be returned or not, at pleasure, is it such a loan; and there must be a loan to make it usury. An option to return makes the

transaction a purchase. These questions are exclusively proper for a jury, and the court cannot decide them.

This mode of investment is common in Alexandria. The purchase of a ground rent or rent charge is a usual mode of providing for families and children; and the usual price of such rents is ten years purchase.

The pleas are bad in form and substance. 1. In pleading the statute; a general plea is bad. The agreement and sum taken must be charged and shown. The contract must be specially set out; and the usurious intention with which it was made must be set out. Forbearance, and giving day, are the effective words of the statute; and they must be averred. 1 Hawkins's P. C. 332, s. 24. Shower, 329. 2 Maule & Selwyn, 377. 1 Saunders, 295. Stephens on Pleading, 343.

The pleas do not show a usurious agreement. They do not aver one collateral to the deed, but set out the deed in its terms. They call it usury. And the effect of the demurrer is not to assist the plaintiff. A demurrer admits facts well pleaded, not epithets or names or illegitimate conclusions. If the facts do not make out usury, no usurious intent can alter the legal character of the deed. Burton's Case, 5 Co. Rep. 69, was the grant of an annuity; the plea sets out the facts, and charges them to be usurious. On demurrer, the court said that the matter shown does not amount to usury; the allegation that it is so, is repugnant to the matter shown, and a demurrer is not an admission of all the matters pleaded, but of such only as are well pleaded.

The question then is, is the deed, per se, usurious; not whether it is evidence of another collateral contract. What is its legal import? Does it import a loan? It says it is a purchase. Does it mean any thing else than the purchase of a redeemable annuity? It does not. The right to redeem after five years is secured by the deed. It has been repeatedly decided, that the purchase of an annuity, at however extravagant a price, is not usury. 1 Wilson, 295. Cro. Eliz. 27. 2 Lev. 7. 3 Wilson, 390. 2 Schoales & Lef. 393. 1 Bro. Ch. Rep. 94. Holt's Nisi Prius Cases, 295.

[Lloyd vs. Scott.]

Mr Swann, in reply, stated; that the demurrer was entered to the deed, because on its face it showed an illegal contract, and required no plea. Cited, Chitty on Contracts, 239, 240. 1 Sid. 285. 1 Saund. 295. 5 Mod. 593. At the same time the pleas were entered; which present, in different forms, the contract as a loan; as an advance; as a corrupt agreement. The demurrer admits the facts stated in these pleas, and all the inferences may be drawn which could be from facts found by a special verdict.

In answer to the arguments of the counsel for the defendants there were cited: 3 Atk. 280. 1 Wilson, 295. 7 Bac. Ab. Usury 194. 3 Bos. & Pul. 159. 3 Barn. & Ald. 664. 4 Camp. 1. 3 Harris & John. 109. 5 Munf. 223.

Mr Justice M'LEAN delivered the opinion of the Court.

This is an action of replevin, brought to replevy certain goods and chattels which the defendant, as bailiff of William S. Moore, had taken upon a distress for rent claimed to be due upon certain houses and lots in Alexandria, owned and possessed by the plaintiff. The sum for which the distress was made is five hundred dollars.

The declaration is in the usual form, and the damages are laid at one thousand dollars. The defendant filed his cognizance, in which he acknowledges the taking of the goods specified in the declaration; and states that a certain Jonathan Scholfield, being seised in fee of four brick tenements, and a lot of ground in the town of Alexandria, by his indenture, dated the 11th of June 1814, in consideration of five thousand dollars, granted, bargained and sold to William S. Moore one certain annuity or yearly rent of five hundred dollars, to be issuing out of and charged upon the said houses and ground, and paid to the said Moore, his heirs and assigns, by equal half yearly payments of two hundred and fifty dollars, on the 10th of December, and on the 10th of June, in each year, for ever thereafter; to have and to hold the said annuity or rent charged and payable as aforesaid, to the said William S. Moore, his heirs and assigns forever. It also states, that the said Scholfield, for himself and his heirs and assigns, did, by the said indenture, among other things,

covenant well and truly to pay to the said Moore, his heirs and assigns, the said annual rent of five hundred dollars, by equal half yearly payments for ever. And if the rent should not be paid as it become due, it should be lawful for the said Moore, his heirs and assigns to make distress for it. That Moore was seised of the rent on the 11th of December 1814, and has since remained seised thereof

The cognizance further states, that on the 29th of October 1816, the said Jonathan Scholfield, by his deed of bargain and sale, conveyed to Lloyd the plaintiff, for ever, certain tenements and lots of ground in the town of Alexandria, whereof the said four brick tenements and lot of ground were parcel, and subject to the rent charge stated. That Lloyd has been seised ever since and possessed of the same ; and that on the 10th of June 1824, two hundred and fifty dollars, a part of the rent, was due, and on the 10th of December following, two hundred and fifty dollars, the balance of the annual rent, was due and unpaid ; for which sums the defendant, as bailiff, levied a distress.

The cognizance is concluded by praying a judgment for one thousand dollars, being double the amount of the rent in arrear.

Moore covenants in the deed, that if Scholfield, his heirs or assigns, " shall at any time after the expiration of five years from the date of the deed, pay to the said Moore, his heirs or assigns, the sum of five thousand dollars, together with all arrears of rent, and a rateable dividend of the rent, for the time which shall have elapsed between the half year day then next preceding and the day on which such payment shall be made ; he, the said Moore, his heirs and assigns, will execute and deliver any deeds or instruments which may be necessary for releasing and extinguishing the rent or annuity hereby created ; which, on such payment being made, shall for ever after cease to be payable."

Scholfield covenanted for himself, his heirs and assigns, that he would keep the buildings in repair ; have them fully insured against fire ; and would assign the policies of insurance to such trustee as Moore, his heirs or assigns, might appoint, that the money may be applied to the rebuilding of

[Lloyd *vs.* Scott.]

the houses destroyed by fire, or repairing any damage which they might suffer.

To this cognizance the plaintiff filed a special demurrer; which in the argument he abandoned, and relies upon the special pleas of usury. To each of the four pleas the defendant demurs specially, and assigns for causes of demurrer,

1. That the said pleas do not set forth with any reasonable certainty, the pretended contract which is alleged to have been usurious, and do not show an usurious contract.

2. That they do not state the time the said pretended loan was made.

3. That they do not state the amount of interest reserved or intended to be reserved, on the said pretended contract.

4. That they do not set forth any loan or forbearance of any debt.

5. That they neither admit nor deny the sale and conveyance of the premises charged with the annuity or rent to have been made by Scholfield to the plaintiff below.

Upon these demurrers the circuit court rendered judgment for one thousand dollars, the double rent claimed in the cognizance.

The plaintiff here prays a reversal of this judgment.

1. Because the deed which forms a part of the cognizance, on its face, shows an usurious contract.

2. Because the pleas set forth, with sufficient certainty, an usurious contract.

The statute of Virginia against usury was passed in 1793, and provides, that no person shall take, directly or indirectly, more than six dollars for the forbearance of one hundred dollars per annum; and it declares, that all bonds and other instruments, for a greater amount of interest, shall be utterly void.

In support of the demurrer, it is argued, that the pleas are defective, as they do not contain any allegation of facts which amount to usury; and that the decision must turn on the construction of the contract between Scholfield and Moore. And it is contended, that although usury appears upon the face of a deed, yet advantage can only be taken of it by plea. That the obligee may explain the contract, by

[Lloyd vs. Scott.]

showing a mistake in the scrivener, or a miscalculation of the parties.

In Comyn on Usury, 201, it is laid down that in an action on a specialty, though it appear on the face of the declaration that the bond, &c. is usurious, still no advantage can be taken of this, unless the statute be specially pleaded. 3 Salk. 291. 5 Coke's Rep. 119. Chitty on Contracts, 240. 1 Sid. 285. 1 Saund. 295, a. The decision of this point is not necessarily involved in the case.

The requisites to form an usurious transaction are three :

1. A loan either express or implied.

2. An understanding that the money lent shall or may be returned.

3. That a greater rate of interest than is allowed by the statute, shall be paid.

The intent with which the act is done, is an important ingredient to constitute this offence. An ignorance of the law will not protect a party from the penalties of usury, where it is committed; but where there was no intention to evade the law, and the facts which amount to usury, whether they appear upon the face of the contract, or by other proof, can be shown to have been the result of mistake or accident, no penalty attaches.

At an early period in the history of English jurisprudence, usury, or as it was then called, the loaning of money at interest, was deemed a very high offence. But since the days of Henry VIII. the taking of interest has been sanctioned by statute.

In this country, some of the states have no laws against taking any amount of interest, which may be fixed by the contract.

The act of usury has long since lost that deep moral stain, which was formerly attached to it; and is now generally considered only as an illegal or immoral act, because it is prohibited by law. Assuming the position, that the pleas contain no averments which extend beyond the terms of the contract; the counsel in support of the demurrers have contended, that no fair construction of the deed, will authorise the inference that it was given on an usurious consideration.

It was the purchase of an annuity, it is contended; and though the annuity may produce a higher rate of interest than six per cent upon the consideration paid for it, yet this does not taint the transaction with usury.

If the court were limited by the pleas to the words of the contract, and it purported to be a purchase of an annuity, and no evidence were adduced, giving a different character to the transaction, this argument would be unanswerable. An annuity may be purchased like a tract of land or other property, and the inequality of price will not, of itself, make the contract usurious. If the inadequacy of consideration be great, in any purchase, it may lead to suspicion; and, connected with other circumstances, may induce a court of chancery to relieve against the contract.

In the case under consideration, five thousand dollars were paid for a ground rent of five hundred dollars per annum. This circumstance, although ten per cent be received on the money paid, does not make the contract unlawful. If it were a bona fide purchase of an annuity, there is an end to the question : and the condition which gives the option to the vendor to repurchase the rent, by paying the five thousand dollars after the lapse of five years, would not invalidate the contract. 1 Brown's Ch. 7, 93. The right to repurchase, as also the inadequacy of price, would be circumstances for the consideration of a jury.

The case reported in 2 Coke, 252, is strongly relied on by the counsel for the defendant. In that case, an action of debt was brought upon an obligation of three hundred pounds, conditioned for the payment of twenty pounds per annum, during the lives of the plaintiff's wife and son. The defendant pleaded the statute of usury; and that he applied to the defendant to borrow of him one hundred and twenty pounds, at the lawful rate of interest ; but that he corruptly offered to deliver one hundred and twenty pounds to him, if he would be obliged to pay twenty pounds per annum.

The court considered this as an absolute contract for the payment of twenty pounds per annum during two lives; and no agreement being made for the return of the principal, it was not considered usury. But, they stated, if there had

been any provision for the repayment of the principal, although not expressed in the bond, the contract would have been usurious.

This is a leading case, and the principle on which it rests has not been controverted by modern decisions.

Scholfield, it appears, was under no obligation to repurchase the annuity, but he had the option of doing so after the lapse of five years, which is a strong circumstance to show the nature of the transaction.

The purchase of an annuity, or any other device used to cover an usurious transaction, will be unavailing. If the contract be infected with usury, it cannot be enforced.

Where an annuity is raised with the design of covering a loan, the lender will not be exempted by it from the penalties of usury. 3 Bos. & Pul. 159. On this point there is no contradiction in the authorities.

If a party agree to pay a specific sum exceeding the lawful interest, provided he do not pay the principal by a day certain, it is not usury. By a punctual payment of the principal he may avoid the payment of the sum stated, which is considered as a penalty.

Where a loan is made to be returned at a fixed day with more than the legal rate of interest, depending upon a casualty which hazards both principal and interest, the contract is not usurious; but where the interest only is hazarded, it is usury.

Does the decision in this case, as has been contended, depend upon a construction of the contract? Are there no averments in the pleas which place before the court material facts to constitute usury, that do not appear on the face of the deed?

If the court were limited to a mere construction of the contract, they would have no difficulty in deciding that the case was not strictly embraced by the statute.

In the second plea, the plaintiff below prays oyer of the deed of indenture, and among other statements alleges, " that it was corruptly agreed between the said Scholfield and the said Moore, that the said Moore should lend to him the sum of five thousand dollars, and in consideration thereof, that he should

execute the said deed, &c." And in another part of the same plea it is stated, " that the said Moore did corruptly agree, that he would in the said indenture covenant, &c. that if the said Scholfield, his heirs and assigns, should, at any time after the expiration of five years from the date of said indenture, pay to the said Moore, his heirs and assigns, the sum of five thousand dollars, together with all arrears of rent, he, the said Moore, would release to him the said annuity."

And it is further alleged, " that the said Moore, in pursuance and in prosecution of the said corrupt agreement, did advance to the said Scholfield the said sum of five thousand dollars." And again, " that the said deed of indenture was made, in consideration of money lent upon and for usury; and that by the said indenture there has been reserved and taken above the rate of six dollars per annum in the hundred, for the forbearance of the said sum of five thousand dollars so lent as aforesaid."

The fourth plea contains, substantially, the allegations as to the lending, &c. that are found in the second plea.

The facts stated in the pleas are admitted by the demurrers, and the question of usury arises on these facts, connected as they are with the contract.

Although the second and fourth pleas may not contain every proper averment with technical accuracy, yet they are substantially good. All the material facts to constitute usury are found in the second plea.

It states a corrupt agreement to loan the money, at a higher rate of interest than the law allows. That the money was advanced and the contract executed, in pursuance of such agreement. That on the return of the principal, with a full payment of the rent, after the lapse of five years, the annuity was to be released. The amount agreed to be paid above the legal interest, for the forbearance, is not expressly averred, but the facts are so stated in the plea as to show the amount with certainty. Five hundred dollars, under cover of the annuity, were to be paid, annually, for the forbearance of the five thousand dollars, making an annual interest of ten per cent. Do not these facts, uncontradicted

as they are, amount to usury ? Is it not evident, from this statement of the case, that the annuity was created as a means for paying the interest, until the principal should be returned, and as a disguise to the transaction ? Such is the legitimate inference which arises from the facts stated in the plea.

At this point in the case an important question is raised, whether Lloyd, the plaintiff in the replevin, being the assignee of Scholfield, can set up this plea of usury in his defence. It is strongly contended that he cannot. He purchased this property, it is alleged, subject to the annuity, and paid for it a proportionably less consideration. That knowing of the charge before he made the purchase, it would be unjust for him now to evade the payment. And the inquiry is made, whether Lloyd could plead usury in this contract, if the annuity had been purchased by Scholfield. He would be estopped from doing so, it is urged, by the obligations of his own contract, as he is now estopped from resisting the claim of Moore.

As to the injustice of the defence, it may be remarked that the objection would apply with still greater force against Scholfield, if he were to attempt, by a similar defence, to evade the payment of the annuity. He received the money after assenting to the contract; but he is at liberty to evade the payment of the annuity by the plea of usury. Is the position correctly taken, that no person can avail himself of this plea, but a party to the original contract ?

The principle seems to be settled, that usurious securities are not only void, as between the original parties, but the illegality of their inception affects them even in the hands of third persons who are entire strangers to the transaction. Comyn on Usury, 169. A stranger must " take heed to his assurance, at his peril ;" and cannot insist on his ignorance of the contract, in support of his claim to recover upon a security which originated in usury.

In the case of Lowe *vs.* Waller, Douglass, 735, the plaintiff was the indorser of a bill originally made upon an usurious contract : though he had received it for a valuable

consideration, and was entirely ignorant of its vice, the court of king's bench, after great consideration, determined that the words of the statute were too strong; and that after what had been held in a case on the statute against gaming, the plaintiff could not recover.

If a bill of exchange be drawn in consequence of an usurious agreement for discounting it, although the drawer to whose order it was payable was not privy to this agreement, still it is void in the hands of a bona fide indorser. 2 Camp. 599. In Holt's N. P. 256, Lord Ellenborough lays down the law, that a bona fide holder cannot recover upon a bill founded in usury; so neither can he recover upon a note where the payee's indorsement through which he must claim has been made by an usurious agreement. But, if the first indorsement be valid, a subsequent usurious indorsement will not affect him; because such intermediate indorsement is not necessary to his title to sue the original parties to the note.

If a note be usurious in its inception, and it pass into the hands of a bona fide holder who has no notice of the usury, and the drawer give to the holder a bond for the amount of the note, the bond would not be affected by the usury. 8 Term Rep. 390.

In the case of Jackson vs. Henry, reported in 10 Johnson, 185, a plea of usury was set up to invalidate the title of a purchaser at a sale of mortgaged premises. This sale, under the statute of New York, is equivalent to a foreclosure by a decree in chancery; and the court decided, that the title of the purchaser was not affected by usury in the debt for which the mortgage was given. The statute of New York declares, all bonds, bills, contracts and assurances, infected with usury, "utterly void." And so say the court, on the adjudged cases, when the suit at law is between the original parties, or *upon the very instrument infected.*

The case of D'Wolf vs. Johnson, reported in 10 Wheat. 367, is relied on by the counsel for the defendant, as a decision in point.

In that case it will be observed, that the first mortgage

being executed in Rhode Island in 1815, was not usurious by the laws of that state; and the second one, executed in Kentucky, in 1817, being a new contract, was not tainted with usury. The question therefore, whether the purchaser of an equity of redemption can show usury in the mortgage to defeat a foreclosure, was not involved in that case.

The Virginia statute makes void every usurious contract; and the second plea contains allegations which, uncontradicted, show that the contract between Moore and Scholfield was usurious in its origin.

This contract, thus declared to be void, is sought to be enforced against Lloyd, the purchaser of the property charged with the annuity. Between Scholfield and Lloyd there is a privity; and if the contract for the annuity be infected with usury, is it not void as against Lloyd?

In this contract, a summary remedy is given to enter on the premises, and levy, by distress and sale of the goods and chattels there found, for the rent in arrear; and if the distress should be insufficient to satisfy the rent, and it should remain unpaid for thirty days, Moore is authorised to enter upon the premises, and to expel Scholfield, his heirs and assigns, and hold the estate. Lloyd, as the assignee of Scholfield, comes within the terms of the contract; and is liable, being in possession of the premises, to have his property distrained for the rent, and if it be not paid, himself expelled from the possession. Under such circumstances, may he not avail himself of the plea of usury, and show that the contract, which so materially affects his rights, is invalid? Moore seeks his remedy under this contract, and if it be usurious and consequently void, can it be enforced?

If usury may be shown in the inception of a bill, to defeat a recovery by an indorsee, who paid for it a valuable consideration without notice of the usury; may not the same defence, be set up, where, in a case like the present, the party to the usurious contract claims, by virtue of its provisions, a summary mode of redress.

The court entertain no doubt on this subject. They think a case of usury is made out by the facts stated in the second plea, and that Lloyd may avail himself of such a defence.

[Lloyd *vs.* Scott.]

The judgment of the circuit court must be reversed, and the cause remanded, with instructions to overrule the demurrers to the second and fourth pleas, and permit the defendant to plead.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel ; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said circuit court, with instructions to overrule the demurrers to the second and fourth pleas, and to permit the defendant to plead, and for such further proceedings as to law and justice may appertain.