PEARSALL *v.* KINGSLAND and others.

A party, who is the direct assignee in trust of a mortgagor, may impeach the
mortgage for usury.  Such an assignee stands in the place of the mortga-
gor and has his rights.

Where a security is good in its inception, it will not be impeached on account
of circumstances in an usurious transfer, between the original mortgagee
and the assignee of the mortgage.

T. P. executed a bond and mortgage to the G. I. Co. for $10,000.  They
pressed a foreclosure, and had obtained a decree.  T. P. got S. K. to ad-
vance $8,000 and paid the balance himself to the company.  The bond,
mortgage and decree were assigned by the G. I. Co. to S. K.; and the lat-
ter (S. K.) afterwards pressed a sale under the decree for the whole $10,000
and interest.  The court held: that S. K. could only have a sale for the
$8,000 and interest.

THE complainant, in this case, was the assignee, by volun- *March* 27,
tary assignment, of all the estate of her son, Thomas Pearsall,      1838.
in trust for the benefit of his creditors and of his wife and
children.   The property assigned included the equity of re- *Mortgage.*
demption of the mortgaged premises, which her son had pre- *Usury.*
viously mortgaged to the Globe Insurance Company for ten *Transfer.*
*Usurious*
thousand dollars ; and which mortgage had been proceeded
upon in this court to a decree of foreclosure and sale.   When
about to be advertised for sale under the decree, in the month
of January, one thousand eight hundred and thirty-seven, the
mortgagor applied to the defendant, Kingsland, to advance the
money upon the security of the property, to pay off the debt
to the receivers of the company and thus save it from being
sacrificed at a forced sale.   Kingsland, taking advantage of
his necessities, would advance only eight thousand dollars,
upon having the security for ten thousand dollars ; and, upon
his advancing the eight thousand dollars, the mortgagor pro-
cured an assignment to be made to the defendant of the bond
and mortgage and of the decree for the whole ten thousand
dollars and the interest to accrue upon it, making up the dif-
ference out of his own money, between the eight thousand

dollars and the amount due to the receivers for principal, interest and costs, in order to procure the assignment.

This was alleged to have been a corrupt and usurious agreement, whereby the defendant had obtained securities for ten thousand dollars and interest, which he was seeking to enforce, upon a loan or advance of eight thousand dollars only.

The agreement was made and the bond and mortgage were assigned to the defendant in the month of January, one thousand eight hundred and thirty-seven. In August of the same year, the mortgagor made the assignment of his estate to the complainant.

An order had been granted, calling upon the defendant, Kingsland, to show cause why an injunction should not issue and a stay be had of a proposed sale of the mortgaged premises under the decree which he was proceeding to enforce.

Mr. *H. P. Edwards*, for the complainant.

Mr. *Cutting*, contra.

*April 3,*     THE VICE-CHANCELLOR:—For all the purposes of the present motion, the bill must be taken as true : the defendant having put in no affidavit or answer.

With respect to the first question, which has been raised upon the argument : whether the assignee or grantee of an equity of redemption has a right to impeach the validity of the mortgage for usury and to be relieved from the payment of it, even if a doubt exists upon this point, in regard to a purchaser who should buy, subject to a mortgage, and retain in his hands the amount of the mortgage, expressly or impliedly assuming the payment of it, yet, in a case like the present, it appears to me there can be no doubt of the right of the assignee to contest the mortgage. Here has not been a purchase subject to the mortgage which the assignee assumed or agreed to pay off. This assignee, Mrs. Pearsall, stands in the place of the mortgagor, with the same rights which he had ; and, like an assignee in bankruptcy or an executor or administrator of a deceased mortgagor, may question the validity of the debt outstanding against the estate.

1838.

PEARSALL
v.
KINGSLAND.

The case of *Jackson* v. *Dominick*, 14 J. R. 435, would seem to be decisive of the point that a grantee of the equity of redemption may raise the question of usury in the mortgage and avoid it upon that ground ; for, there, ejectment was brought upon a title derived from the mortgagor, subsequent to the mortgage, against the mortgagee, who had proceeded upon a statutory foreclosure, under the power contained in the mortgage, and obtained an absolute title ; and the plaintiff was permitted to go into evidence of the usurious consideration of the mortgage (although it was objected to) and upon his proving usury to the satisfaction of the jury, the court gave judgment for the plaintiff. See also, *Jackson* v. *Packard*, 6 Wend. 415.

So, in *Lloyd* v. *Scott*, 4 Peters, 205, it was held, that the grantee of lands, subject to an annuity or rent-charge, might set up the defence of usury in the deed from his grantor creating the rent-charge, the payment of which was attempted to be enforced by the summary remedy of distress under the deed.

The next question is, upon the effect of the agreement, as alleged in the bill, under which the defendant held the bond and mortgage and claims to be paid the ten thousand dollars with interest ?

The present case, I consider, is governed by *Bush* v. *Livingston*, 2 Caines' Cas. in Er. 66, which goes, *quatuor pedibus*, with it. There, Livingston owed Evertson six thousand two hundred and twenty-two dollars ; and part of the money was secured by mortgages. The latter pressed for payment—in consequence, Livingston arranged with him to take five thousand six hundred dollars in cash and his notes for the residue. Livingston then applied to Bush to advance the five thousand six hundred dollars to Evertson, agreeing to repay it in ninety days, with a douceur of four hundred dollars ; the money thus advanced and the douceur to be secured by an assignment from Evertson of the mortgages, each of the several assignments to express three thousand dollars as the consideration paid by Bush to Evertson. This was all carried through. Bush, afterwards, filed his bill of foreclosure against Livingston and his assignee Townsend (Livingston having become a bankrupt). The latter set up usury in his answer ;

and his assignee, Townsend, claimed the same benefit of the defence as the bankrupt.

There the unanimous opinion of the court of errors appears to have been delivered by *Spencer, J.,* who held, upon the authority cited, that a security for payment of money, in its inception uncontaminated with usury, can, by no after agreement for the receipt of a greater sum than the statute allows for forbearance, be rendered usurious ; that such after agreement may be void for the excess, but the original security will be good. Hence, a security, made on a good and *bona fide* consideration, cannot be impeached on account of a usurious transfer. Therefore, the bond and mortgage there given for six thousand dollars and assigned by the mortgagee to Bush, by the procurement of Livingston, the mortgagor nominally for the whole sum, and under an agreement that it was to be available to Bush for the six thousand dollars and interest, but upon which he had paid only five thousand six hundred dollars, the remaining four hundred dollars being intended as a bonus for advancing the money, was nevertheless valid in his hands to the extent of the five thousand six hundred dollars and the lawful interest ; and his recovery upon it was restricted accordingly.and the usurious agreement, which related to the transfer, was decided only to affect Bush's claim to the excess, on account of its being a hard and unconsionable advantage taken by the lender of the mortgagor.

*In the present case, taking the bill to be true, the usury* complained of does not entirely vitiate the bond and mortgage in the hands of the defendant. They are valid securities and available to him for the eight thousand dollars advanced and interest ; but, for no greater amount.

*Then, as to the excess: is the complainant entitled to the* interference of the court and to relief upon this bill ?

The pleading alleges that the defendant persists in claiming the ten thousand dollars and interest and in disposing of the property for that amount. And though the bill proceeds on the ground of avoiding the bond and mortgage entirely for usury and prays the specific relief of having the bond and mortgage delivered up to be cancelled, without offering to pay either principal or interest of the money actually advanced, yet it contains the general prayer for such other relief as the

See also *Hammond* v. *Lopping,* 13 Wen. 505.

nature of the case may require; and this general prayer is in the disjunctive. It is, therefore, competent for the court, upon this bill and under the general prayer, to grant relief as to the excess of the two thousand dollars. For the purpose of obtaining this relief it was necessary for the complainant to come into equity. She has had no opportunity and can have none of making her defence at law in relation to the two thousand dollars. The defendant is proceeding to enforce the payment of the whole ten thousand dollars and interest, out of the property, by a speedy sale; and it is only by the authority of this court that his proceeding can be intercepted.

Regarding this, then, as a bill (which I am at liberty to do) filed for the purpose of giving relief, so far as to restrict the defendant to the receipt of eight thousand dollars and interest, which it must be admitted he is entitled to, there was no necessity for its containing the offer to pay that sum, since a discovery is waived by the bill.

I consider it proper to make the order absolute for an injunction to stay the sale, unless the defendant will stipulate to accept of the eight thousand dollars, with lawful interest from the time of the advance; in which case, if the money is not paid, the sale may proceed.