———o o o———

## WELLS and others *vs.* CHAPMAN and others.

A trust estate, being incumbered by a valid mortgage, upon which a decree of foreclosure had been obtained, the trustees effected a loan, from a corporation, for the security of which the mortgage and decree were assigned to the lender who paid the mortgagee's demand. The mortgage was not discharged, but was kept on foot, for the benefit of the lender. The loan was usurious, and was illegal, as being contrary to the charter of the corporation. *Held* that notwithstanding the usury and illegality of the loan, the mortgage and decree remained valid, and were neither extinguished nor merged, but were unaffected by the usury and illegality of the contract upon which they were assigned.

*Held also,* that the trustees could waive the usury and the illegality, for the benefit of the estate; and that having procured a transfer of the mortgage and decree, from the corporation, they could enforce the same.

*Held further,* that a purchaser of the mortgaged premises who, before such transfer, had acquired, by judicial sale, the equity of redemption, including the title of the trust estate, could not alledge the usury or illegality in the loan from the corporation, to defeat the lien of the mortgage and decree.

One who purchases subject to an outstanding mortgage, is precluded from setting up its invalidity in the hands of its owners, on any ground then existing.

Where two tenants in common of lands subject to an old mortgage, had become involved in perplexing claims and counter-claims, and a litigation between

them had ensued, in which their joint interests were ordered to be sold, and the same were sold to a stranger; *it was held* that one of such co-tenants was at liberty to purchase and hold the old mortgage, for his own benefit, exclusively; and that he might enforce it for its whole amount, although he bought it at a discount.

S. owning a lot of land, granted to R. an adjoining lot, with the right to use *for a paper mill,* water conveyed in a race-way across the lot of S.; R. covenanting that the water should be used *for no other purpose. Held* that the owner of the R. lot could not convert the paper mill into a *cotton mill,* and still retain the easement; but that a purchaser of S.'s lot under a mortgage foreclosure, could restrain him to the use of the water for a *paper mill* only.

On giving a mortgage, bearing interest, for part of an advance of money, the lender took from the borrower an agreement to pay to the broker an annual sum equal to about seven per cent, on the whole advance, until the latter *was paid up; calling* the annuity a compensation for brokerage, &c. *Held* that the mortgage was usurious.

IN EQUITY.] This was an appeal by the defendants from a decree of the late assistant vice chancellor of the first circuit. The facts, as well as the points decided, are fully stated in the report of the case before the court below. (4 *Sandf. Ch.* 313.)

*S. A. Foot,* for the appellants.

*Murray Hoffman,* for the respondents.

*By the Court,* ROOSEVELT, J.   In the year 1814, Samuel Slee of Poughkeepsie, whose name has so often appeared in the legal annals of this state, was the owner of a cotton factory and a farm adjacent in the county of Dutchess.  On the 25th of October, 1814, he mortgaged the premises, for $12,000 to the Washington Insurance Company, who, on the 4th of June, 1823, obtained a decree of foreclosure and sale, to satisfy the principal and interest then due, exceeding $15,000.   This decree, on the 4th of October, in the same year, was assigned to the Life and Fire Insurance Company—a corporation, whose name has also borne a conspicuous part in the history of litigation.   And three years after, they assigned it to Josiah Barker—being only a few days before the appointment of receivers to wind up their affairs.  On the 3d of May, 1830, Barker and the receivers

assigned to Thomas L. Wells, one of the complainants in this suit in trust; and the leading object now is to carry into effect the original decree of foreclosure, and to adjust and settle some of the numerous difficulties, which in the lapse of nearly thirty years, have gathered round it. The case has been already argued before Assistant Vice Chancellor Sandford, and by him decided in favor of the complainants. An appeal taken to the late chancellor, was likewise heard before him, but unfortunately, in the press of business left undecided. For a general statement of the facts, which it is unnecessary again to repeat in detail, and for the reasons of the assistant vice chancellor, reference may be had to the report in 4 *Sandf. Ch. Rep.* 313.

The first point taken by the appellants is, that the assignment of the mortgage and decree of foreclosure, by the Washington Insurance Company, to the Life and Fire Insurance Company, at the request of the defendant Chapman, was void, and transferred no title to the latter company, being against its charter, against the restraining act, and against the statute of usury.

I shall consider the question of usury first. It is conceded that there was no usury in the original mortgage; and if there had been, it would have been cured by the decree of foreclosure. There was none as between the two insurance companies. The Washington company received, no matter from whom, the full amount of their demand. But Chapman, it is said, who either on his own account or as trustee for Mrs. Dyett, represented the equity of redemption and negotiated the transaction with the other company, obtained from them the money on loan, upon the security of the assignment, at a usurious rate. This, as a fact, is no doubt true. But usury, as matter of law, is a personal privilege which may be waived by the parties, and which cannot be asserted by strangers. Such is the general rule. Its exceptions are cases of assignees in bankruptcy, or voluntary trustees for the payment of creditors. (*De Wolfe* v. *Johnson,* 10 *Wheat.* 367. *Pearsall* v. *Kingsland,* 3 *Edw. Rep.* 195, *affirmed on appeal.*)

The present case, however, so far as regards the point of usury, is in every respect identical with that of *Bush* v. *Livingston,*

decided by a unanimous vote of the late court of errors, in conformity with the views of Mr. Justice Spencer, (2 *Caines' Cas. in Err.* 66,) and subsequently followed by the court of chancery in the case of *Pearsall* v. *Kingsland.* In both those cases the mortgagor was pressed by the mortgagee for payment; and to obtain time procured a third person, at a usurious rate of interest, to advance the necessary sum, the lender taking an assignment of the mortgage as security. Default being subsequently made, the substituted mortgagee filed his bill to foreclose, when the facts above detailed were set up as a defense. It was overruled by both courts, except so far as to deduct the usurious excess; and that too, as will be seen, when the wrongdoer was himself the party seeking relief from the court, as complainant.

Here, if it were necessary to strengthen the case, the Life and Fire Company are not complainants. The suit, in effect, is for the benefit of the very trust estate whose funds were used to redeem the securities from the company's lien. And whether the assignment to the Life and Fire Company and from them to Wells, passed the legal title or not, is of little moment; as the only result, in the latter view, would be to make the original mortgagees, who have no further claim on their own account, trustees in equity for those who have. It is the established rule of the court of chancery, where securities are not actually canceled, and not intended to be, to keep them on foot, as a means of protection, till the rights of all parties are adjusted.

Bache, therefore, in law, purchased the property subject to the mortgage, whether the mortgage had been assigned contrary to the usury act, the restraining act, or the incorporating act. Neither of these objections concerned him, or was available to him. Besides, he purchased, were that fact necessary, with full notice of the incumbrance, and at a public sale, made expressly, and in terms, subject to all claims under it. He has, therefore, especially as against Mrs. Dyett and her children, neither law nor equity in his favor. (*Given* v. *Kemp*, 13 *Mass. Rep.* 575.) The decision of this point, if correct, virtually disposes of the whole appeal.

Wells *v.* Chapman.

There is however another question, of little comparative moment, presented by the defendants' counsel, touching the doctrine of easements. Slee, before executing his mortgage to the Washington Company, had given to one Reid, by mutual covenant, a right to a water course, to be used for the purpose of carrying on a *paper manufactory*, but not to be used or employed *for any other purpose.* Can the parties convert the *paper mill* into a *cotton mill*, and still retain the easement? The assistant vice chancellor held that, although this diversion of the water, from its original design, might not work a forfeiture, yet it would authorize Slee, and those claiming under him through the mortgage, to stop the current while so misapplied, or, at their election, to obtain an injunction. The grant of an easement, like any other grant, is to be construed according to the fair intent and meaning of the parties. In this case there is no difficulty in arriving at the intent. It is not left to inference. It is clearly expressed in direct and positive terms; and, not being repugnant to any rule of law, " it is the duty of courts of justice to carry it into effect." The revised statutes, in this respect, (1 *R. S.* 748,) have only declared more precisely and positively what before was acknowledged, as a general principle, without them. I do not perceive, therefore, how the assistant vice chancellor could have done otherwise than enjoin the parties from making any use of the water for the purpose of a cotton mill, when the grant was upon the express condition that it should be applied to a paper mill, and a paper mill alone. There may be cases in which the designation of the object, to which the easement is to be applied, may be construed as merely descriptive. Such was the one recently passed upon by the court of appeals; a decision, it will be seen, founded upon, and not in contravention of, the presumed intention of the parties, and which, therefore, instead of overruling, goes to corroborate the views above expressed. The question is one purely of intention. When that is plain, the duty of the courts, as already stated, is equally plain. To test the doctrine contended for by the appellants' counsel, we may suppose a beautiful, picturesque country residence, with a romantic stream, constituting its most attractive feature, coursing

through its woods and lawns. An adjacent owner, not thus favored desirous of remedying by art the defect of nature, applies to his neighbor for leave to construct a canal, in the form of a mimic rivulet, to supply a fountain, throwing up its graceful jets, in view of the owners and visitors of both places. Having obtained a grant, in accordance with his wishes, he subsequently, in a moment of neighborly passion, (not an unusual disturber of rural felicity,) converts the cooling fountain, so pleasant to the eye and harmonious to the ear, into an unsightly, hissing steam engine. Would there be no remedy for such a wrong? None by injunction; none by cutting off the stream from its perverted recipient? I do not entertain a doubt that redress, in such a case, could be had in either mode. The law respects the rights of parties, in matters of taste and imagination, as well as in matters of profit. It stays the wrongful destruction of ornamental trees, as well as the wrongful consumption of mere firewood. There may be injuries too fanciful for its jurisdiction; but that is no reason why it should not interfere in *any* case, where the rights of a refined and cultivated taste are violated. Here, the owner of the water had a right to withhold a grant altogether. If he made one, then he had a right to impose conditions and restrictions on its use. There is nothing absurd in his confining the grant to a paper mill. He may have had very good reasons for so doing; they may have been substantial reasons of pecuniary advantage, or they may have been reasons, less real perhaps, but more elevated, of ideal association. It is not for the court to inquire into them. It is sufficient to know that he had a right to reserve, and that he did reserve, all his original ownership, except in the one particular of the use of the water for a paper mill.

This case, as presented to the court, occupies nearly four thousand folios. It was elaborately examined by the assistant vice chancellor, and we see no grounds in the argument advanced by the appellants for reversing or modifying his decree.

Decree affirmed.

[NEW-YORK GENERAL TERM, June 11, 1852. *Edwards, Mitchell* and *Roosevelt,* Justices.]