CALDWELL & CO. *v.* LUKE LEA.*

*(Nashville.* December Term, 1924.)

1. **STATUTES.** Caption of act held to sufficiently indicate contents: "and."

   Caption of Acts 1925, chapter 69, describing its as an act to authorize issuance of bonds and notes, "and" to provide conditions and terms of issuance, *held* not violative of Constitution, article 2, section 17, as not indicating contents of act which included provision respecting interest rate; "and" implying modification of one idea by another. *(Post, pp.* 50-52.)

   Acts cited and construed: Acts 1923, ch. 29; Acts 1925, ch. 69.

   Constitution cited and construed: Const., art. 2, sec. 17; art. 1, sec. 8; art. 11, secs. 7, 8.

2. **CONSTITUTIONAL LAW.** Interest. Classification of act providing special rate of interest on long-term notes and bonds of large amount not unreasonable.

   Acts 1925, chapter 69, authorizing seven and one-half per cent. interest on, long-term secured bonds and notes in amounts of $50,000 or more, *held* not violative of Constitution article 1, section 8, relative to deprivation of property, otherwise than by law of the land, article 11, section 8, prohibiting special privileges or immunities, or section 7, requiring interest rate to be uniform throughout state, as classification is not unreasonable, borrowers having property of value of $50,000 or more not requiring the same protection as others. *(Post, pp.* 52-54.)

   Acts cited and construed: Acts 1859-60, ch. 41.

   Cases cited and approved: Caruthers v. Andrews, 42 Tenn., 378; McGhee v. Trotter, 48 Tenn., 453; Perkins v. Watson, 61 Tenn., 173; McKinney v. Hotel Co., 59 Tenn., 104, 115.

   Constitution cited and construed: Const., art. 11, secs. 6, 7.

---

On constitutionality of statutory discrimination as to interest rates, see notes in 2 L. R. A. (N. S.), 813, 27 L. R. A. (N. S.), 898.

3. **CONSTITUTIONAL LAW.** Interest laws are exercise of police power, an upheld if classification justifiable.

Interest laws are an exercise of police power of state, and will be upheld if classification can possibly be justified. (*Post, p.—.*)

Acts cited and construed: Acts 1925, ch. 69.

Case cited and approved: Ogilvie v. Hailey, 141 Tenn., 392.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

W. E. NORVELL, JR., for complainant.

W. P. COOPER, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding brought under the Declaratory Judgments Act (Laws 1923, chapter 29) asking for a declaration as to the constitutionality of chapter 69 of the Acts of 1925. The chancellor was of opinion that the statute was valid, and the case has been appealed to this court. The act is as follows:

"An act, to authorize the issuance of long term bonds and notes in amounts of fifty thousand dollars or more and to provide the conditions and terms of said issuance.

"[Here is inserted a preamble setting forth the advantages to the business interests of the State to be derived from statutory permission to contract for an in-

terest rate as high as seven and one-half per cent. on the class of loans dealt with.]

"Section 1. Now therefore be it enacted by the General Assembly of the State of Tennessee, that corporations, firms and individuals may and are hereby authorized to issue their bonds or notes, in an aggregate amount of $50,000 or more, secured by lien or deed of trust, bearing interest at a rate not greater than seven and one-half (7½) per cent. per annum, payable annually or semi-annually, the shortest maturity of said notes or bonds to be not less than two years after their date of issuance.

"Section 2. Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it.

"Passed April 7, 1925."

The first objection made is that the caption does not fairly indicate the contents of the act. Constitution, article 2, section 17.

We think this objection is not well founded.

If the act had been entitled one "to provide the conditions and terms of the issuance of long-term bonds and notes in amounts of $50,000 or more," there could be no question about the aptness of the title. The body of the act does provide the terms and conditions upon which such obligations can be issued, secured by lien or deed of trust, not of a shorter maturity than two years, and bearing interest at a rate not greater than seven and one-half per cent. We think the provision respecting the interest rate, which is the matter said to be beyond the caption, is but one of the conditions or terms. The interest rate is as much a condition or term of a loan as

is the maturity, security or amount, and a provision as to the interest rate is easily embraced in that part of the title indicating legislation as to "conditions and terms."

The caption would perhaps have been clearer had it been worded as above suggested. However, an authorized and common use of "and" is to imply a modification of one of the connected ideas by the other " 'as the tediousness and process of my travel,' that is, 'the tedious process' etc.; 'thy fair and outward character,' that is 'outwardly fair character.' " International Dictionary. So here the words of the title following "and" are used as a qualification of "issuance", etc., in the first clause.

It is further objected to the act that it violates the provisions of section 8 of article 1, of the constitution of Tennessee, sections 8 of article 11, and section 7 of article 11.

These provisions of the constitution follow:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land."

"The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefits of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities or exemptions other than such as may be, by the same law, extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created, or its powers increased or diminished by special laws;

but the general assembly shall provide by general laws, for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed; and no such alteration or repeal shall interfere with, or divest, rights which have become vested.''

''The legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State; but the legislature may provide for a conventional rate of interest, not to exceed ten per cent. per annum.''

We think that these objections may be considered together for, under the decisions of this court, section 7 of article 11 of the constitution, except requiring the legislature to fix an interest rate, adds nothing to section 8 of article 1, and section 8 of article 11, of the present constitution.

We may lay aside so much of section 7 of article 11 as authorizes the legislature to provide for a conventional rate of interest. The Constitution of 1834 contained the other provisions of the section requiring the legislature to fix the rate, and the provision that the rate established should be equal and uniform throughout the state. Under the Constitution of 1834, however, this court held in two cases that the legislature was empowered to fix a contract rate, and that an act authorizing a contract rate not exceeding ten per cent. was valid. *Caruthers* v. *Andrews,* 2 Cold., 378; *McGhee* v. *Trotter,* 48 Tenn., 1 Heisk., 453. In these cases the court had under consideration chapter 41, of the Acts of 1859-60, to the effect just stated.

These cases also decided that classification was permissible under the constitution of 1834, respecting loans in

which a special contract for the rate of interest was made.

There is left then of section 7 of article 11, aside from the provision that the legislature shall fix the rate, only the provision that the rate established shall be equal and uniform throughout the State. We think such provision adds nothing to the other provisions of the Constitution mentioned. Interest laws and all other laws with a few authorized exceptions must operate with equality and uniformity throughout the State under the Constitution of 1870.

The only question then remaining is whether the classification made in the act before us is reasonable.

*Caruthers* v. *Andrews,* supra, seems to indicate that such a classification is reasonable. Such is the law elsewhere.

"It is generally considered that the State may deal with different classes of money lenders in different ways without offending constitutional provision, so long as the classification is reasonable and all who bring themselves therein are treated uniformly." 27 R. C. L., 204.

"However, such special exemptions from and modifications of the general usury laws are almost universally held to be constitutional and valid." 39 Cyc., 914.

The object of the provision of section 6 of article 11 of the Constitution of 1834, carried into section 7 of article 11 of the Constitution of 1870 that the interest rate should be equal and uniform was to cut off the grant of charter powers to banks and moneyed institutions to exact a greater rate than individual lenders were permitted to obtain. *Perkins* v. *Watson,* 61 Tenn. 2 Baxt., 173; *McKinney* v. *Hotel Co.,* 59 Tenn., 12 Heisk., 104, 115.

Under section 7 of article 11 of the Constitution of 1834 the legislature was authorized ''to grant such charters of corporation as they might deem expedient for the public good.'' The legislature had been empowering banks by their charters to contract for a special rate of interest, and section 7, just quoted apparently authorized a continuance of this practice. Section 6 of the Constitution of 1834 was adopted to prevent the grant of any special charter power of this sort.

*McKinney* v. *Hotel Co.*, supra, contains some language that may be construed as indicating views contrary to those heretofore expressed. What was decided in this case, however, was that an act authorizing one single corporation to issue bonds at a rate higher than the legal rate of interest was invalid. The case has uniformly been cited for this proposition and was of course in this respect rightly decided.

Interest laws are an exercise of the police power of the State, and if any possible reason can be conceived to justify a classification made by such laws, they will be upheld. *Ogilvie* v. *Hailey,* 141 Tenn., 392, 210 S. W., 645.

We think the classification made in this statute can be readily sustained. Usury laws are passed to protect the borrower, especially the poor, from the rapacity of money lenders. The statute before us deals only with loans to be made to borrowers having property of the value of $50,000 or more. Such persons do not require the same protection as do others less fortunately endowed.

We conclude, therefore, that chapter 69 of the Acts of 1925 is a valid statute, and it is so declared.

The decree of the chancellor is accordingly affirmed.