ANNIE N. ROLLER et al. v. J. D. HAMILTON et al.

Petition for Certiorari denied by Supreme Court, May 22, 1931.

Eastern Section. February 28, 1931.

Dodson & Ferguson, of Kingsport, for appellant.

J. D'. Baumgardner and Burrow & Burrow, all of Bristol for appellee.

QWEN, J. The defendants, J. D. and J. J. Hamilton, have appealed from a decree rendered against them in the Chancery Court of Hawkins County, in the sum of $1,173.55, and costs of suit.

In this judgment there was a recovery of $1,073.55 principal and interest on a note, and $100 as attorney's fees. The note provided for 10 per cent attorney's fees, in the event the note was placed in the hands of an attorney for collection.

The complainants are Mrs. Annie N. Roller and her son, John A. Roller, who were the administratrix and administrator of the estate of Dr. A. J. Roller, who was the husband of the administratrix and father of the administrator. On November 2, 1921, one B. E. Smith executed his promissory note to Dr. A. J. Roller, in the sum of $12,000 due twelve months after date. He agreed to pay 8% interest semiannually and in advance. At the time of the execution of this note there was a statute allowing parties to contract for interest not to exceed 8%, Acts of 1921, Chapter 28. Various pay-

ments had been made on this note by B. E. Smith before suit was instituted. On the reverse side of said note is the following:

We, as endorsers, waive demand, notice and protest and guarantee payment of this note and acknowledge that we sign with full knowledge of this contract.

Walter E. Smith,
J. D. Hamilton,
J. J. Hamilton.

Said note also provided, in its face, that the sureties consent that the time of payment may be extended without notice. This note was placed in the hands of Mr. J. D. Baumgardner, an attorney at Bristol Tennessee, for collection. Mr. Baumgardner collected $7000. He, also, on September 6, 1926, received a check from B. E. Smith, the maker of the note, for $1,652, which check stated that it was for payment due on note. This check was payable to Annie N. Roller. At the time this check was given for the note, the note was marked paid by check and delivered to the maker B. E. Smith's brother, Fred Smith, who delivered the check for $1,652 to the attorney. The maker, also, gave the attorney a check for $600, which the attorney agreed to accept in full fee for the collection. The $600 check was paid, but Smith stopped payment on the $1,652 check. It appears that the maker has become insolvent, also his brother Walter E. Smith, joint endorser of the defendants.

The defendants excepted to the decree pronounced against them, prayed an appeal to this Court, and have assigned six errors. These errors assigned are set forth in the contentions made in the defendants' answer, which are as follows:

"These two defendants in their answer, which they also filed as a cross-bill, say that they are not liable in this cause for either one of these amounts, or for any amount, and their defenses can be summed up in the following manner:

"First: They enter a general denial of liability.

"Second: The defendants claim that complainants accepted the check of B. E. Smith in the sum of $1,652 in full payment and release of said note, which when accepted constituted a complete settlement and satisfaction of said note on which they were endorsers.

"Third: Because the complainants extended time to the maker of said note without defendants' knowledge or consent.

"Fourth: Because the said note had been paid in full, including principal, interest and attorneys' fees.

'Fifth: Because the note was usurious and called for an illegal rate of interest.

"An additional defense is made to the attempt of the complainants to collect the amount of $777.31, as additional attorneys' fees, because

the defendants claim that the attorneys of the complainant accepted $600 in full and complete satisfaction and payment for his services in connection with the note, and because said $600 is a fair and reasonable amount to be paid said attorney, or attorneys, for his or their services rendered in connection with collection of the note.''

Defendants' answer was filed as a cross-bill, and the cross-action is for the collection of usury and a proper application of same in payment of said note.

We are of the opinion, from the evidence, that the attorney accepted the maker's check for $1,652, in good faith, and this check on which payment was stopped did not cancel the note. The maker Smith testified that he stopped payment on the check because he had found, as he thought, a mistake in the calculation of interest, and the check was for too great amount. He testified that according to his calculation he still owed something between $650 and $700. The check was received as a conditional payment and not as an absolute payment. This assignment or contention overruled. The second assignment insists that the defendants were released as endorsers on account of the holder's promise to delay collection, without the endorsers' knowledge or consent. We find that the evidence preponderates against any extension or promise of extension of time. However, this contention is not sound because the defendants guaranteed the payment of the note sued on.

"It is well settled in Tennessee that, when the guaranty is absolute, no demand or exhaustion of the maker is required; nor is any notice required of the acceptance or default. It does not matter whether the guaranty stipulates that the maker will pay, or that the guarantor will pay, nor whether the maker is solvent or not. In either event, the undertaking is absolute, and the guarantor may pay the amount, or see that it is paid. This is not the case of a guaranty of solvency or collectibility, which requires previous demand and suit. Klein v. Kern, 94 Tenn., 34, 28 S. W., 295, and authorities there cited.'' Banking Co. v. Hall, 119 Tenn., 562, 563.

"It is insisted that appellant was released by reason of the renewal of the notes and the extension of time of payment for valuable considerations (payment of interest) without notice to complainant, and without her knowledge and consent. We think there is nothing in this contention for several reasons. The parties were guarantors of the indebtedness which was evidenced by the notes. The notes were mere memoranda of the indebtedness, and their loss or destruction would not destroy the indebtedness.'' Villines v. Gro. Co., 6 Tenn. App., 263.

The second assignment is overruled.

By the third assignment it is insisted that the note sued on should have had a credit of $480, as shown by a check dated November 2,

1921. This adverse holding was called to the attention of the Chancellor in a petition to rehear. The Chancellor gave full consideration to this credit of $480, and we find that the defendants have been given credit for every dollar B. E. Smith had paid.

It is next insisted that the note was usurious, that at least the defendants would only be liable for 8 per cent up to the time the 8 per cent law was repealed. Counsel for the defendants takes the position that the parties in this case on November 2, 1921, could contract for the face of the note for 8 per cent up and until the due date of the note, namely November 2, 1922. But that after the date of maturity, unless otherwise provided, the note would bear the legal rate of interest. That if the parties had intended the note to bear 8 per cent after maturity, they should have, by expressed words, said so in the note. The 8 per cent law was repealed January 22, 1923. We are of the opinion that the repeal of the 8 per cent interest statute did not effect the note sued on. The maker, endorsers and guarantors had agreed to pay 8 per cent interest, 'payable semi-annually, in advance. After the parties agree upon the rate of interest until the money is paid, until the date of payment that agreement controls and fixes the measure of damages upon default is supported by the greater majority of cases in the United States in which this question has arisen.

"These very cases, however, recognize the principle that, if the parties themselves have fixed a rate to be paid up to the time of payment, 'that rate will be respected. In this case both the statute and the warrants provided that such warrants shall shall bear interest at the rate of 8% 'until paid,' and we are therefore of opinion that complainant is entitled to that rate from November 26, 1894, the date of filing the bill and issuing the subpoena."

In Cromwell v. Sac Co., 96 U. S., 63, the Supreme Courts held, as a matter of law, that where the note sued on bore 8% interest, the judgment on the note should draw 8%.

We are of the opinion that it was not a charge of usury to collect 8% interest on this note, neither was it usurious to collect the interest six months in advance, and this contention is overruled.

Lastly, it is insisted that the court erred in allowing $100 fee to counsel for the complainants. Mr. Baumgardner had agreed with the maker, Mr. Smith, to accept $600 as his attorney's fee for the collection of the note if it could be settled without suit. It was not settled without suit. Baumgardner collected $7000. The complainants were forced to employ additional counsel besides Baumgardner. He became a witness in regard to the $1,652 check which Smith gave as a balance due on the note, and on which he stopped payment. Baumgardner testified that he would not have accepted or agreed to

246

take the $600 if he had known that the $1,652 check would not have been paid.

We are of the opinion that the defendants are liable for this $100 attorney's fee, which is little less than 10% on the amount of the judgment, but the complainants have not appealed.

A stipulation in a note for 10% attorneys fees if the note is placed in the hands of an attorney for collection, is a stipulation for liquidated damages and such fees are recoverable, in an action on the note, without proof that they were incurred. Bank v. Mayer, 129 La., 891; 57 So., 308; Mallory v. Trust Co., 150 Tenn., 219.

It results that there is no error in the decree of the lower Court, the assignments are all overruled. The judgment is affirmed.

Judgment is entered against the defendants and sureties on appeal bond for the amount recovered below, with 6% interest from the date of the judgment, and all the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.