### JENKINS et al. v. DUGGER.
#### No. 7558.

Circuit Court of Appeals, Sixth Circuit.
May 10, 1938.

J. R. Simmonds, of Johnson City, Tenn., and Collins Denny, Jr., of Richmond, Va. (Collins Denny, Jr., of Richmond, Va., and Simmonds & Bowman, of Johnson City, Tenn., on the brief), for appellants.

R. L. Taylor and J. H. Epps, Jr., both of Johnson City, Tenn. (Cox, Taylor & Epps, of Johnson City, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The Appalachian Publishers, Inc., a Virginia corporation engaged in the business of publishing a newspaper at Johnson, Tenn., was adjudicated a bankrupt on March 12, 1934. On February 15, 1929, the bankrupt borrowed $100,000 through the Grace Securities Corporation of Richmond, Va., underwriter. The loan was evidenced by 7 per cent. serial bonds of varying denominations, payable at stated periods of two years or more, and secured by a lien on certain real estate and improvements, machinery, fixtures, equipment, and other personal property owned and used by the bankrupt in its publishing business. The lien was evidenced by a trust deed dated February 15, 1929, to the Investment Trust Company, a Virgina corporation, trustee.

The original trustee resigned and the mortgagor as authorized under the trust instrument, named a successor. Subsequent changes were made so that at the time of bankruptcy, W. P. Artz, a business associate of the bankrupt's president, was qualified and acting.

The mortgagor agreed in the trust instrument to deposit $10,700 with the trustee on or before February 15, 1930, which was less than two years before the maturity date of any of the bonds. This sum was to be held by the trustee without obligation to pay interest thereon and to be applied by it on bonds and interest maturing February 15, 1931. Other conditions in the trust instrument required the mortgagor to procure and pledge, as additional security, life insurance in the sum of $100,000 on its president, Guy L. Smith, to carry fire insurance on the improvements, to pay all taxes and assessments, and to permit no wasting of assets. In default of any of these conditions, all bonds outstanding under the trust instrument became due and payable at the option of the holder.

In compliance with the sinking fund provisions of the mortgage, the bankrupt paid to the various trustees between February and May, 1930, $7,500. The maturity of the first $20,000 of the mortgage notes was February 5, 1931, and on February 8th of the same year, the bankrupt paid to the trustee $2,500 additional, whereupon it retired $10,000 of this maturity.

The remaining $10,000 was paid out of the proceeds of a personal note of Guy L. Smith, president of the bankrupt, on which he used the bonds as collateral. It is not disclosed in the record how he obtained them from the owners. The bankrupt paid all interest due on the entire debt to February 15, 1933, except $318.50.

At the date of bankruptcy, $77,600 was due on the mortgage indebtedness. Between February 18, 1929, and February 1, 1930, the bankrupt incumbered the mortgaged property by second and third liens of which there remained unpaid $47,200, and the bankrupt also owed delinquent taxes of $13,000. The junior lienholders and the trustee are attacking the validity of the first mortgage on the ground of usury. The lower court upheld their contention, hence this appeal.

The property of the bankrupt was sold in the proceeding for $45,000 free of lien, which was less than the uncontested junior lien claims. The appellants insist the case is moot as to the trustee.

As a condition to obtaining the loan, underwriting commissions and insurance premiums on the life of its president were paid by the bankrupt, amounting to approximately $10,000.

On March 10, 1934, owners of the bankrupt's first mortgage bonds instituted foreclosure proceedings in the state court of

Tennessee, which precipitated these proceedings, and those holding first, second, and third liens all filed preferred claims; the latter class seeking to displace the former.

The question for decision collaterally involves usury. It directly concerns the construction of a statute of the state of Tennessee which has not been interpreted by the courts of that state.

The statutory legal rate of interest in Tennessee is 6 per cent., and any instrument of indebtedness bearing on its face a greater rate is void. Section 7302, 1932 Anno.Code of Tenn.

In 1925, the General Assembly of the state, without specifically amending the earlier statute, passed an act authorizing a statutory interest rate of 7½ per cent. on bonds or notes aggregating $50,000 or more and secured by a lien with maturity of two years or more. Chapter 69, Public Acts of Tenn. 1925. The Supreme Court of Tennessee decided that this act was valid and did not repeal the general usury statute, but set up an exception. Caldwell & Co. v. Lea, 152 Tenn. 48, 272 S.W. 715.

The District Court found the loan of the appellants was not within the provisions of the 1925 Act because the sinking fund provision in the trust instrument was a device to secure a higher rate of interest than permitted by statute so that the loan fell within the bar against usury and was therefore void.

The issue of bonds exceeded the minimum statutory requirement of $50,000, and the shortest maturity of any part of the issue was two years or more. The borrower agreed to deposit with a trustee of its own choice, within less than two years, $10,700, but this sum was not to be deposited with the lenders, nor was it under their control.

The only usurious device found by the lower court or complained of by the parties, is the sinking fund provision of the trust instrument. There is no claim of usury based on the requirement that life insurance should be procured and carried on the life of the president of the borrower for the protection of the lenders, nor that underwriting commissions were to be paid as part of the loan. We confine our decision solely to the case as made.

Under the trust instrument, $20,000 of the bonds matured February 15, 1931. $10,700 was to be deposited with the trustee on or before February 15, 1930, which, if paid to the lenders or made available for their use, would have been a payment on the debt within less than two years, but as none of it could have been available to any of them, it cannot be said that it constituted such payment. The unsoundness of appellee's contention more readily appears when consideration is given to the law of usury.

Usury imports the existence of four elements: (1) A loan or forbearance, either express or implied; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than allowed by law; and (4) an intention to violate the law.

The last may be implied if the first three are present. The element that a greater profit is exacted by the lender than allowed under the law must be made to clearly appear in applying the statute here under consideration. It is not to be lightly assumed that the avarice of a lender would drive him to the risk of a forfeiture of his entire investment in order to obtain a slight unlawful gain.

A contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest. It does not depend on whether the lender actually gets more than is lawful, but whether there was a purpose to obtain more than legal interest for the use of his money, and whether the terms of the transaction and the means used to effect the loan are appropriate to that end.

In order to determine the illegality of the exaction the inquiry must always be directed to what the lender is to receive, not what the borrower is to pay.

From the Mosaic laws to the present, every civilized society has recognized that the necessitous borrower was likely to become the victim of the avaricious lender, and the weight of every law on the subject has fallen on the possibility of the receipt by the lender of more than the law allowed and whatever the borrower might be required to pay to another in connection with the loan was not banned unless the lender by agreement, trick, or device could obtain an illegal exaction. No part of the sinking fund contracted to be paid by the borrower in the case here was made available to the lender in advance of the maturity of the bonds.

No court has included in the definition of usury, security for the debt, if the borrower could recover possession of the collateral or pledge by payment of the debt. A

sinking fund paid to any one other than the lender by a borrower is nothing more than additional security. This necessarily follows, as out of such a transaction the lender cannot obtain usurious interest.

■ The only probability of the lender obtaining an illegal exaction by reason of the payment into the sinking fund was the acceleration of the maturity of the debt by reason of the borrower failing to comply with its provisions.

The interest reserved in the bonds and in the collateral trust agreement did not exceed the maximum statutory rate if paid according to the terms of the contract. Where the lender on default can recover only the accrued principal and interest, acceleration will not make the loan usurious.

■ It must be assumed that all parties will keep their agreements, and usury cannot emerge from breach of a contract not otherwise usurious. If the performance of the contract in all of its terms will not return to the lender more than the statutory rate of interest, usury is absent.

It is on the assumption of performance, not violation, that the legality of contracts will be determined. It would be a perversion of justice to permit one who violates a contract to shift the penalties therefor to the innocent party. Compare Low v. Sutherlin, Barry & Company, 9 Cir., 35 F.2d 443; Armstrong v. Alliance Trust Company, 5 Cir., 88 F.2d 449; Lloyd v. Scott, 4 Pet. 205, 230, 7 L.Ed. 833; In re Mansfield Steel Corporation, D.C., 30 F.2d 832; Union Pacific Railroad Company v. United States, 99 U.S. 700–769, 25 L.Ed. 496.

The appellants rely on other alleged errors for reversal, but, in view of the conclusion herein reached, it is unnecessary to consider them.

The decree of the District Court is vacated and the case remanded to that court for further proceedings consistent with this opinion.

HICKS, Circuit Judge (dissenting).

Before 1925 the legal rate of interest in Tennessee was 6 per cent. The Act of 1925 c. 69, provides: "That corporations, firms and individuals may, and are hereby authorized to, issue their bonds or notes in an aggregate amount of $50,000.00 or more, secured by lien or deed of trust, bearing interest at a rate not greater than seven and one-half (7½%) per cent per annum, payable annually or semi-annually, the shortest maturity of said notes or bonds to be not less than two years after their date of issuance."

It seems clear enough that the term "maturity" means the date upon which the notes or bonds become due and payable, and I think that in contemplation of the statute if one borrowed as much as $50,000, securing its payment by a deed of trust, and agreed to pay 7 per cent. interest, he was entitled to the use of the money for at least two years. The payment of 7 per cent. was consideration for the use of the money for that period. The act is silent upon the subject of a sinking fund.

The bonds involved were in accordance with the statute, but the trust deed to which they referred and which became a part of the contract carried this provision: "It is further covenanted and agreed that the said Corporation shall deposit on or before the 15th day of February, 1930, with the Trustee, the sum of $10,700.00, which said sum shall be held by the said Trustee, without obligation on it for the payment of interest thereon, and shall be applied on February 15th, 1931, to the payment of the bonds maturing hereunder on the 15th day of February, 1931."

The effect of it, if complied with, was that the borrower lost the use of $10,700 of his loan for one year before it was payable to the holders of the bonds; and if not complied with, then, by another provision of the trust deed, all of the bonds matured at the option of the holders.

I think that the agreement to pay 7 per cent. interest upon a loan so conditioned was unauthorized by the act, and, the usurious nature of it appearing upon the face of the contract, was unenforceable.

From my viewpoint the judgment should be affirmed.