RAY H. LOUCKS, APPELLEE, V. RUTH H. SMITH, APPELLANT.

48 N. W. 2d 722

Filed July 10, 1951.    No. 32947.

*Kennedy, Holland, DeLacy & Svoboda,* and *Harry R. Henatsch,* for appellant.

*Kirkpatrick & Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Ray H. Loucks brought this action in the district court for York County against Ruth H. Smith. The purpose of the action is to obtain a declaratory judgment fixing the rights of the parties under an agreement entered into on June 30, 1948, and to recover all moneys due plaintiff thereunder. The court found generally for the plaintiff and fixed the total amount of his recovery at $12,194.39 with interest thereon as in the judgment set forth together with costs. Defendant filed a motion for new trial and has appealed from the order overruling it.

The question involved is, is the amount herein sought to be recovered an accumulation of usurious interest? If so, do the Nebraska statutes governing usury operate as a bar to its recovery?

"Usury has been defined as 'the excess over the legal rate charged to a borrower for the use of money. Taking illegal profit for the use of money.' [Bouvier's Law Dictionary; Maccrackan v. Bank, 164 N. C. 24, 80 S. E. 184, 49 L. R. A. (N. S.) 1043.] Also 'as contracting for or receiving something in excess of the amount allowed by law for the loan or forbearance of money.' [39 Cyc. 888.]" Allen v. Newton, 219 Mo. App. 74, 266 S. W. 327.

" 'To constitute usury, it is of course essential that an excess of the legal maximum be exacted in consideration of the loan.' 27 R. C. L. 223, sec. 24." Western Securities Co. v. Naughton, 124 Neb. 702, 248 N. W. 56.

"To make a contract usurious there must be an agreement between the borrower and lender by which the latter receives or reserves a greater rate of interest

than the law allows. There must be an intent on the part of the borrower to give and of the lender to receive interest in excess of the legal limit." Rose v. Munford, 36 Neb. 148, 54 N. W. 129. See, also, Menzie v. Smith, 63 Neb. 666, 88 N. W. 855; Stuart v. Durland, 115 Neb. 211, 212 N. W. 31, 53 A. L. R. 739.

The prime contract of the parties being dated April 30, 1941, section 45-101, Comp. St. 1929, is here applicable. See Lefferdink v. Schmutte, 149 Neb. 695, 32 N. W. 2d 194. This section provides that any rate exceeding ten dollars per year upon one hundred dollars shall be invalid.

As stated in Tyler on Usury, p. 110: "* * * in order to constitute usury, there must be (1) a loan, express or implied; (2) an understanding between the parties that the money lent shall or may be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned." The author then goes on to state: "Unless these four things concur in every transaction, it is safe to affirm that no case of usury can be declared; and this may be regarded as a rule universally recognized in all of the States." See, Jenkins v. Dugger, 96 F. 2d 727, 119 A. L. R. 1484; 66 C. J., Usury, § 65, p. 174; In re Bibbey, 9 F. 2d 944; 55 Am. Jur., Usury, § 12, p. 331.

The intent which is necessary to constitute usury is not a specific intent to violate the statute but an intent to exact payments which exceed the amount of interest allowed by the statute. See, Manchester Realty Co. v. Kanehl, 130 Conn. 552, 36 A. 2d 114; Jenkins v. Dugger, *supra.*

The effect of making a contract providing for usurious interest is fixed by section 45-105, R. S. 1943, as follows: "If a greater rate of interest than is allowed in section 45-101 shall be contracted for or received or reserved, the contract shall not on that account be void, but if

in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall recover only the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid; * * *." See Detweiler v. Forman, 120 Neb. 780, 235 N. W. 330.

To determine whether all of the elements constituting usury are present the court will disregard the form which the transaction may have taken and look only to its substance. If all the elements are present the transaction will be condemned as usurious but if any one of the elements is lacking the transaction is not usurious. See, In re Bibbey, *supra;* 66 C. J., Usury, § 65, p. 174; Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555; Batchelor v. Mandigo, 95 Cal. App. 2d 816, 213 P. 2d 762.

As stated in Blaisdell v. Steinfeld, *supra:* . " 'In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present.' (39 Cyc. 918.)"

The record shows that the business out of which this litigation arose had its inception in 1936. At that time Frank G. Thorp, appellee, and Eldon H. Hatch entered into an agreement dated May 14, 1936, whereby Thorp and appellee were to furnish the money to establish a cash and carry grocery and meat market in York, Nebraska, and Hatch was to operate it. Hatch, for operating the store, was to receive a fixed salary and a share of the profits. These profits were to be applied on his purchase of an interest in the business. Thorp was at that time the general manager of Nash-Finch Company located in Grand Island and appellee was the buyer and sales manager of the dry groceries department of the same firm. Nash-Finch Company is a wholesale grocer. Both Thorp and appellee then lived in Grand Island.

These parties, to accomplish their purpose, organized a corporation known as Grand Central, Incorporated. The incorporators were Hatch, his wife Verda, and Harold A. Prince. Prince is a lawyer located in Grand Island and at the time was acting for all of the parties. Hatch was issued one share of stock, his wife one share of stock, and the balance, or 18 shares, was issued to Prince. Prince held all the stock in trust for the parties subject to the terms of their agreement, he having no interest in the business whatsoever.

Thorp and appellee originally furnished $2,000 of capital but later, in 1937, paid in an additional $2,900. The store was opened and Hatch was in charge. He continued to operate it until in 1938 when, because of an automobile accident, he was no longer able to remain in charge. That is when Mearl D. Smith came into the picture.

Mearl D. Smith and his wife, appellant, were at that time living in Palmer, Iowa. He owned and operated a small grocery store there. They had formerly lived in Grand Island. Hatch recommended Smith to Thorp and appellee. Smith, like Hatch, had no money to put into the business but, by agreement with Thorp and appellee, came in and took over under an assignment of Hatch's agreement. The assignment was dated March 10, 1938. The two shares of stock that had been issued to the Hatches were placed, one each, in the names of the Smiths. The Smiths then moved to York where he took charge of the store.

Smith's operation of the business was very successful. The business repaid to appellee and Thorp $2,000 of the $4,900 they had put into it so that as of March 27, 1940, they had $2,900 invested therein. At that time Smith's share of the profits was sufficient to pay for the share of the business it was provided in the agreement he could buy. Consequently the parties entered into an agreement, as of that date, which provided that the stock which was being held in trust by

Prince should be canceled and new stock issued to the parties as their interests were therein fixed but subject to certain conditions. The details of these conditions are not here material. As a result of this agreement Smith became the owner of certain shares of stock in the corporation as did appellee and Thorp.

After the income tax on the corporation's profits had been computed and paid for 1940 and the parties realized the amount thereof and in view of a change or proposed change raising the future income tax to be paid by corporations, appellee, Thorp, and Smith came to the conclusion that a corporate structure was not desirable for their business. In addition Smith thought, for business reasons, it would be best if the business was conducted in his name. To accomplish these purposes an agreement dated April 30, 1941, was entered into. This agreement, approved by appellant, was never intended as a sale of the business to Smith. Appellee and Thorp had no desire or intention of selling their interest therein. It was entered into for the purpose of doing away with the corporate structure of the business and to put the business in Smith's name for business reasons only. Otherwise the parties intended to leave the interests and rights of all the parties as they had been.

The agreement resulted in the corporation being dissolved and the business being placed in Smith's name. They also, by their subsequent agreement of March 3, 1942, fixed the amount of appellee's and Thorp's invested capital at $2,832.56 instead of $2,900. This figure was arrived at by an agreed-to appraisal of the furniture and fixtures on April 30, 1941, and a subsequent fixing of the value of the merchandise and other items of a similar nature as of April 30, 1941, by the agreement dated March 3, 1942. The agreement of April 30, 1941, also fixed the extent of appellee's and Thorp's interest in the business by establishing the share of the profits they were to receive from the business, which was one-half. This is the same as it had been under

their previous agreements. It also sought to limit appellee's and Thorp's liability for any losses of the business to the extent of their investment which was fixed at $2,832.56. Just what the nature of appellee's and Thorp's relationship to the business really was under this agreement we need not decide. Suffice to say that while we realize the language used by the parties would indicate a sale and a loan with interest to be paid on the loan in the form of one-half of the profits the business earned each year, we are, nevertheless, of the opinion that the profits which were to be paid were not paid as interest on any loan but paid upon the basis of the interest which each of the parties then owned and retained in the business.

That Smith so understood the contract is fully evidenced by his subsequent conduct. Smith is acknowledged by all parties to have been a very successful business man and very capable in his business dealings. The record shows that under the terms of the agreement of April 30, 1941, he paid to appellee and Thorp for the balance of the year 1941 $2,526.80; for 1942 $3,152.02; for 1943 $5,392.02; for 1944 $8,151.43; and for 1945 $7,531.08, or a total of $26,753.35; that after the payment to appellee and Thorp of their share of the profits for 1946 had been deferred by the parties' agreement dated January 21, 1947, hereinafter more fully referred to, Smith, in the forepart of 1948, agreed to pay to Thorp $4,270.08 for his one-fourth share of the profits for 1946 and $4,197.28 for 1947. During these negotiations, in February 1948, Thorp wrote Smith that when Smith had made these payments that he, Thorp, would assign to Smith all his interest in the store at York. Thorp's correspondence relating to this settlement leaves no doubt of the fact that Thorp, at that time, thought he was the owner of an interest in the business.

In addition to the payments of $4,197.28 which Smith agreed to make to Thorp from the 1947 profits of the store appellant, because of a deduction of $3,000 taken

from the inventory at the end of 1947 and which had not been taken into account in computing Thorp's share of the profits for that year, paid to Thorp an additional $750. This was paid after Smith had been accidentally killed in an automobile accident on March 31, 1948.

It is inconceivable to believe that if Smith had ever thought that by the agreement of April 30, 1941, he had bought appellee's and Thorp's share of the business from them for $2,832.56 and the profits he was paying them was only interest thereon and he could have paid them that amount and avoided all future obligations thereunder that he would not have done so. His actions in agreeing to pay and paying these amounts speak louder than words can express that he fully understood and knew that appellee and Thorp retained their interest in the business and that he was legally obligated to pay them their share of the profits based thereon.

The agreement of Smith, appellee, and Thorp, entered into on January 21, 1947, with reference to the agreement of April 30, 1941, is not here material. It deferred the payment to appellee and Thorp of their share of the profits of the business for the year 1946 subject to certain conditions based on a remodeling of the store by Smith. It also provided for a cancellation of the $2,832.56 in case of Smith's death but that provision does not become material here as appellee does not seek to recover any part thereof. Its purpose indicates appellee and Thorp still had an interest in the business.

When Smith was accidentally killed in a car accident he died intestate. He left as his only heirs appellant, his wife, and their daughter Naomi. Appellant obtained from her daughter all the interest she inherited in the business. Thereby she acquired all of her husband's interest therein. Appellant then entered into an agreement with appellee executed June 30, 1948. While the language used in the agreement does not so provide, it is apparent these parties sought by this agreement to carry forward the plan of the previous agreements and

thereby put appellant in the place of her late husband. That she so understood the purpose of this agreement is admitted by appellant.

Appellant therein agreed that at the time of his death Smith owed appellee $9,423 under the various agreements which were all based on the agreement of April 30, 1941. This amount appellant agreed to pay, however, she desired time for that purpose as she did not have sufficient money available in the business with which to pay it. By the agreement payment was deferred. Therein they provided that $2,923 was to be paid on or before October 1, 1948, and the balance to be paid not before April 1, 1950, and only upon six months' notice by either party.

In regard to the one-fourth share of the profits of the business being payable to appellee the agreement continued that feature of the previous plan although referring to it as interest on the $6,500, payment of which was deferred. Consequently, this item has, since the death of Smith, continued upon the same basis as before, that is, upon appellee's interest in the business. As such it does not fall within any category to which the principle of usury is applicable.

The trial court determined the amount which appellee should recover. Neither of the parties has taken any exception thereto. In view thereof we will not concern ourselves as to the correctness thereof.

In view of the findings herein we come to the conclusion that the judgment of the trial court is correct and it is affirmed.

AFFIRMED.