**In the Matter of O. C. BOGAN, Debtor.**
**No. BK–67–1811.**

United States District Court
W. D. Tennessee, W. D.
Feb. 28, 1968.

Benjamin T. Wages, Memphis, Tenn., for debtor.

Winchester, Goff, Winchester & Walsh, Memphis, Tenn., for petitioner.

Thos. R. Prewitt, Memphis, Tenn., for trustee.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

This is a petition to review the actions of the Referee in Bankruptcy in a Chapter XIII, Wage Earner Plan Proceeding. The review was sought by Memphis Loan & Thrift Company, Inc., hereinafter called Loan Company. The primary issue concerns whether or not an unsecured note which was the basis of the claim of the Loan Company is usurious under the law of Tennessee.

On June 1, 1967, the debtor, O. C. Bogan, filed a Wage Earner's Petition in the Bankruptcy Court. A meeting of creditors and adjournments thereof were held to consider the Plan. The Loan Company first unsuccessfully undertook to become a secured creditor. On June 27 or June 28, 1967, the Loan Company indicated that it was an unsecured creditor and filed a claim rejecting the proposed plan. On June 28, 1967, the Referee entered an order requiring the Loan Company to appear on July 7 and produce specific information concerning possible usurious features of the claim. On July 7, 1967, the Loan Company was granted additional time to comply with the Referee's order of June 28, 1967, and the Referee questioned the attorney for the Loan Company concerning possible usu-

rious features of the claim and others filed by the Loan Company in other cases. On July 19, 1967, the Referee filed a Memorandum Opinion and Order requiring the Loan Company to present to the Court on July 21, 1967, the date of the last scheduled adjourned meeting of creditors, certain documents and evidence to prove the claim it had filed under the Wage Earner Plan. The Memorandum Opinion and Order was 25 pages in length and set forth in detail the reasoning and conclusion of the Referee pertaining to the law of usury as applicable to the Loan Company which operated under the Industrial Loan and Thrift Act of the State of Tennessee. The opinion dealt with the claim in the instant case and specific claims of a similar nature in other Wage Earner cases wherein this loan company had filed claims in pending Wage Earner Plans in the Bankruptcy Court. The Memorandum Opinion and Order also ordered the attorney for the Loan Company to file affidavits at a later date, pertaining to possible usurious features as set forth in the opinion of the Referee in all claims filed by the Loan Company since June 1, 1966. It was estimated that this involved approximately 225 cases.

On July 21, 1967, the Adjourned Meeting of Creditors was had and an amended order approving the plan was entered on that date. The order indicated that the proposed plan was approved and that the Loan Company "had agreed" to file a claim and would receive $17.00 in monthly payments as an unsecured creditor. Subsequent thereto, on July 24, 1967, the Loan Company filed an amended claim accepting the plan but it did not comply with the Referee's orders of June 28, 1967 and July 19, 1967.

There was attached to the amended claim a printed form of promissory note signed by the debtor in the amount of $612.00, payable in eighteen monthly installments of $34.00 each, including the final installment. The note dated March 10, 1967, hereinafter will be referred to as the "claim note". It was signed as the fifth in a series of notes made by the debtor in favor of the Loan Company which series began January 8, 1966, when the debtor executed a note for $150.00. The successive notes dated April 30, 1966, August 5, 1966, December 1, 1966 and the claim note, dated March 10, 1967, all constituted a new loan made before the preceding loan had been repaid and included the amount necessary to pay the balance of the preceding loan.

The claim note, on its face, bears a computation which reads as follows:

Date 3/10/67 Statement

| | |
|---|---|
| Amount of Note | $612.00 |
| Interest ........................................ 55.08 | |
| Loan Fee ........................................ 24.48 | |
| Ins: L 18.36 A&H 45.90 ....................... 64.26 | |
| Ins. Prop. 18.36 ............................... 18.36 | |
| Unpaid bal. former loan ........................450.00 | |
| Total disbursed (subtract) .............................. | $612.18 |
| Cash received by borrower ~~minus~~ ......................Minus .18 | |
| Ref. Ins. L 12.47 A&H 24.71 ............................ | 37.18 |
| Ref. Ins. Prop. 12.47 .................................. | 12.47 |
| Refund – Interest ..................................... | 9.54 |
| Cash to Cust. ........................................ | 59.01 |

The items which were the basis of a refund had been charged in the prior note dated December 1, 1966, three months and ten days before the claim note. The charges on that prior note which formed the basis of the refund on the claim note are as follows:

| | CHARGE | REFUND |
|---|---|---|
| Life, Acc't. & Health Ins. | 56.70 | 37.18 |
| Property Insurance | 16.70 | 12.47 |
| Interest | 48.60 | 9.54 |

The claim was filed on a printed form that provides spaces for the insertion of the names of the debtor and creditor, the number of the cause, and the amount of the claim. The claim was signed "Memphis Loan & Thrift, by Charles A. Walt." Charles A. Walt was not an officer in the company as required by Gen. Order 21, 11 U.S.C. following § 53. The claim does not contain any specific information concerning usury. It merely recites, "Memphis Loan & Thrift, 25 S. Second Street, Memphis, Shelby County, Tennessee, being duly sworn, deposes and says:

"* * * * * *

7. That the claim is free from usury."

After the petition to review was filed, there was also filed in the cause an affidavit made by the Vice President of the Loan Company which recited that the claim, in the amount of $581.40, based on a promissory note executed by O. C. Bogan, is free from usury as defined by the laws of the State of Tennessee.

In its petition for review, the Loan Company prayed that the Memorandum Opinion of the Referee be reviewed and held for naught; that the Court adjudge that the Referee issue no further orders in regard to the claim of the Loan Company in the instant case or to its claims in other causes in which the plans had been confirmed by the Referee. The petition further prayed that if the Court be of the opinion that it should decide whether or not the claim in the instant case was usurious, that petitioner be allowed to introduce additional proof in many categories.

At the hearing on the petition to review, this Court ruled that under the facts of the case, including irregularities in the signing of the claim, the Referee had the power to make further inquiry into the question of usury even though an amended order had been entered conditionally approving the plan. The order approving the amended plan was entered before the claim of the Loan Company was filed and the Court so finds. The Court further ruled that the Memorandum Opinion and Order of the Referee entered in this cause could not and did not affect other pending causes in the Bankruptcy Court. Wherefore, petitioner was sustained to that extent. At that time the Court referred the matter to the Referee for further hearings and proof concerning usury of the claim of the Loan Company in the instant case.

The Referee scheduled hearings. Immediately prior thereto, the Loan Company sought permission of the Referee to withdraw its claim with prejudice. The Referee overruled that application and the Loan Company then amended its claim to "zero", and moved that the hearings not be conducted. Similar motions were made ex parte to this Court and overruled, and the hearings were conducted by the Referee. Findings of Fact and Conclusions of Law were filed by the Referee wherein he determined that the claim note was usurious on its face in that it provided for illegal interest under the Tennessee law and, further, in that the loan or investigation fee provided for in the Industrial Loan and Thrift Act at the rate of $4.00 per $100.00 of the principal amount of the

loan exceeded the allowable amount and that the excess constituted usurious computation of interest. The Referee further found that the facts did not support a loan fee of $4.00 per $100.00 for services and expenses as allowed in the Act.

The Referee further held that the claim note was usurious because the facts indicated that the debtor was charged with insurance without his request and that the Loan Company received substantial profits from the insurance premiums.

A subsequent hearing was conducted in this Court on oral argument and briefs. The petitioner now contends:

1. Under 11 U.S.C. § 1056(b) the Referee had no right or jurisdiction to inquire into the issue of usury after confirming the plan, in the absence of objections to the claim by the debtor, the trustee, or another creditor.

2. That the action of the petitioner in withdrawing its claim and reducing it to zero rendered further proceedings in the cause moot, wherefore the petition for review should be dismissed.

3. If contentions one and two should be denied, the Court should make its own findings because the report of the Referee is advisory only. The petitioner charges that the Referee prejudged the issues. Petitioner makes accusations that the Referee had a personal antagonism for the original lawyer of the Loan Company and that the Referee made harassing requirements of this loan company while disregarding the activities of other loan companies similarly operating under the Industrial Loan and Thrift Act.

4. The Loan Company further contends that there is no usury in any event.

The Loan Company contends that the Referee was precluded from requiring further proof of the claim because he had approved the plan on July 21, 1967. The Loan Company relies upon 11 U.S.C. § 1056(b) which is Section 656(b) of the Bankruptcy Act and which provides as follows:

"Before confirming any such plan the court shall require proof from each creditor filing a claim that such claim is free from usury as defined by the laws of the place where the debt was contracted."

Under the facts of this case the Referee had a right and duty to require further proof concerning the issue of usury in the claim of the Loan Company. The plan was approved subject to certain creditors filing claims later. The Referee indicated prior to the filing of the amended claim his opinion on the law of usury in Tennessee. The claim ultimately filed ignored two orders of the Referee. The original attorney for the Loan Company was not the proper person to sign the claim and admitted that he was not familiar with the facts required by the Referee to determine the issue of usury. Furthermore, as will be indicated hereinafter, the claim note is usurious on its face.

In addition to the above reasoning, 11 U.S.C. § 93(k) provides:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, but not after the estate has been closed."

A Bankruptcy Court has equity powers among which are the rejection in whole or in part, according to the equities of the case, of claims previously allowed. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281.

The referee upon his own motion and without objection by anyone may reconsider the allowance or status of a claim. American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A, 280 F.2d 119 (C.A.2, 1960).

The attempted withdrawal of the claim did not render the proceedings moot. Upon application and request of the Loan Company, further proceedings were granted by this Court and the Referee was directed to conduct hearings. It was the duty of the Referee to con-

duct the hearings and report to this Court.

Upon consideration of the entire record, the Court finds that the determination of the Referee herein was not motivated by any bias and did not reflect any impropriety on his part. Statements in the briefs and argument of the petitioner have addressed themselves to erroneous and unfounded accusations against the Referee. This opinion will reflect the Findings and Conclusion of this Court, including any wherein the Court differs with the Referee on matters of fact in the record and the conclusions of law to be derived therefrom.

In Jenkins v. Dugger, 96 F.2d 727, 729, 119 A.L.R. 1484 the Court of Appeals for the Sixth Circuit considered usury under the Tennessee law and stated as follows:

"Usury imports the existence of four elements: (1) A loan or forbearance, either express or implied; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than allowed by law; and (4) an intention to violate the law.

The last may be implied if the first three are present. The element that a greater profit is exacted by the lender than allowed under the law must be made to clearly appear in applying the statute here under consideration. It is not to be lightly assumed that the avarice of a lender would drive him to the risk of a forfeiture of his entire investment in order to obtain a slight unlawful gain.

A contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest. It does not depend on whether the lender actually gets more than is lawful, but whether there was a purpose to obtain more than legal interest for the use of his money, and whether the terms of the transaction and the means used to effect the loan are appropriate to that end.

In order to determine the illegality of the exaction the inquiry must always be directed to what the lender is to receive, not what the borrower is to pay.

From the Mosaic laws to the present, every civilized society has recognized that the necessitous borrower was likely to become the victim of the avaricious lender, and the weight of every law on the subject has fallen on the possibility of the receipt by the lender of more than the law allowed and whatever the borrower might be required to pay to another in connection with the loan was not banned unless the lender by agreement, trick, or device could obtain an illegal exaction."

## INTEREST

The claim note shows its amount to be $612.00, and on the face thereof it shows that $55.08 of the amount of the note is designated as interest. The note is payable in eighteen (18) installments of $34.00 each.

Interest is defined by statute in Tennessee as follows:

"Interest is the compensation which may be demanded by the lender from the borrower, * * * for the use of money." T.C.A. § 47–14–103.

It is the general rule in Tennessee that installment payments for an obligation are first applied to the interest and then to the principal. While the general rule may be varied by contract, a contract cannot control the computation of interest or the time interest should run so as to increase the rate of interest beyond the legal maximum. Dowler, Trustee v. Georgia Enterprises, Inc., 162 Tenn. 59, 34 S.W.2d 445.

In the instant case, interest was deducted in advance, pursuant to the Industrial Loan and Thrift Act, T.C.A. § 45–2007, which provides, among the powers and privileges given to companies operating under the Act, as follows:

"(f) To lend money on the personal undertaking of a borrower or other persons, with or without security in-

cluding certificates of indebtedness or investment purchased by the borrower simultaneously with said loan transaction, or otherwise, and to deduct interest in advance on the face amount of the loan for the full term thereof."

If it is assumed that all other charges set forth on the note are free from usury, the debtor received the use of $556.92 ($612.00, the amount of the note, less $55.08, the amount of the interest). In an installment transaction part of each payment represents the return by the borrower of part of the money which the lender has previously delivered to the borrower to use. Applying the general rule to the instant case, at the end of the first month the debtor was to pay $34.00, of which $2.78 was interest and $31.22 of the principal was returned. At the end of the payments the debtor would have paid a total of $612.00, including interest at approximately 12% per annum on the use of $556.92.

Article 11, Section 7 of the Constitution of Tennessee provides as follows:

"The Legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State; but the Legislature may provide for a conventional rate of interest, not to exceed ten per centum per annum."

■ Conventional interest is contractual interest between the parties. Caruthers v. Andrews, 42 Tenn. 378.

In Pugh v. Hermitage Loan Co., 167 Tenn. 389, 70 S.W.2d 22, the Supreme Court of Tennessee referred to its former construction of the Small Loan Statute as follows:

"We endeavored to give to the statute a construction which would not render it in conflict with the provision of the Constitution of Tennessee, article 11, § 7, authorizing the Legislature to provide a conventional rate of interest 'not to exceed ten per centum per annum.' By this constitutional limitation the Legislature, as well as the 'freedom of contract' claimed by de-fendant, is limited in this jurisdiction."

■ Under the Industrial Loan and Thrift Act interest can be deducted in advance without violating the ten percent maximum interest rate allowed by the Constitution, but in the instant case the instrument shows on its face that the rate of interest is approximately twelve percent per annum.

Counsel for the Loan Company argue that the instrument signed by the debtor in the instant case was an investment certificate which was collateral security for the note and it is the certificate which is payable in installments instead of the note. The facts do not support a finding that a separate investment certificate was security for the note. Furthermore, the claim was filed as an unsecured obligation.

■ It should be noted that this Court does not consider that it was called upon to determine the constitutionality of the Industrial Loan and Thrift Act; nor does it intend to hold that any portion thereof is violative of the Constitution of the State of Tennessee. The Court does hold that the Act must be interpreted to be limited by Article 11, Section 7, of the Constitution of Tennessee. The Court, therefore, finds in the instant case that the claim note was usurious on its face because it shows that the interest provided was in excess of the constitutional maximum.

■ The deduction of interest in advance and the practice of frequent renewals of the loans followed by the Loan Company shows a shocking opportunity for profit on the part of the Loan Company. On March 10, 1967, the debtor signed a claim note, a portion of which was used to repay the balance on his December 1, 1966 obligation, which was itself the third renewal in a series. The December 1, 1966 obligation, which was original amount of $540.00. On March 10, 1967, after the debtor had made three payments of $30.00 each, the balance due was $450.00. At the time that the December 1, 1966 loan was made the debtor

was charged $48.60 interest, or six percent (6%) of $540.00 for fifteen months, and obligated himself to repay that in monthly installments. On March 10, 1967, the debtor was refunded $9.54 of the $48.60 which he was charged on December 1, 1966. The difference of $39.06 was in the $450.00 which was repaid, and he was charged an additional $55.08 for interest at the time of the March 10th transaction. While it is true that the debtor is not required to make new loans, in doing so he signed notes which obligated him to pay $39.06 in interest for the use of the $90.00 which he had repaid over a period of three months. If the March loan had been paid as scheduled in this transaction, the Loan Company would have received a return on its $90.00 at a rate in excess of one hundred and fifty percent (150%) per annum. However, this problem appears to be one for the legislature or regulatory state agencies. The collection of interest in advance in the amount of the maximum allowed by statute is not usurious. Roller et al. v. Hamilton et al., 13 Tenn.App. 241. This does not mean that the constitutional maximum might be exceeded by collection of interest in advance.

■ Nor is it usurious to incorporate interest from a prior loan into the principal of a new loan by ageement. Parham v. Pulliam, Executor, 45 Tenn. 497.

■ Furthermore, the payment of a note before maturity does not entitle the debtor to demand the return of prepaid interest or interest accruing between the date of payment and maturity in the absence of an agreement thereto. Crowley v. Kolsky, 57 S.W. 386 (Tenn.Chan.App. 1900).

■ The Courts in Tennessee have also determined that a lender or creditor may require a premium or bonus as a prepayment privilege charge when the prepayment is made voluntarily by the debtor. Silver Homes, Inc. v. Marx & Bensdorf, Inc., 206 Tenn. 361, 333 S.W.2d 810.

Therefore, in the absence of some coercion, duress or misrepresentation by the loan company this exorbitant windfall on renewal is not in and of itself usury.

## INVESTIGATION OR LOAN FEE

■ The Industrial Loan and Thrift Act, T.C.A. § 45–2007(i) allows companies qualified by the terms thereof:

"To charge for services rendered and expenses incurred in connection with investigating the moral and financial standing of the applicant, security for the loan, investigation of titles and other expenses incurred in connection with the closing of any loan an amount not to exceed four dollars ($4.00) per each one hundred dollars ($100.00) of the principal amount loaned, and a proportionate amount for any greater or lesser amount loaned, provided no charge shall be collected unless a loan shall have been made."

The claim note indicates on its face that the loan fee was in the amount of $24.28, which is $4.00 per $100.00 on the face amount of the note which was $612.00. Apparently some factor in excess of 4% is applied to the other items which are included in the note to arrive at $4.00 per $100.00 of the face amount of the note. It is undoubtedly true that an applicant for a loan would hardly be prepared to pay a loan or investigation fee in cash at the time that the loan is applied for. Therefore, this Court is of the opinion that the Legislature intended to authorize that the proper loan fee could be borrowed in order to complete the transaction, but the Legislature did not intend for the fee to be charged on the fee itself. This Court is of the opinion that the principal amount of the note must be computed before the $4.00 per $100.00 is applied to compute the loan fee. In the instant case this was not done and the Loan Company has shown on the face of the instrument to have received a slight profit in excess of $4.00 per $100.00, which constitutes excessive compensation and, therefore, usury.

This Court further finds that the proof in the instant case supports a finding that the loan fee was usurious in that it did not bear a reasonable relation to the expenses and services of the lender. The record reflects a series of five loans by the debtor from the Loan Company. The first of these five was executed on January 8, 1966, and was a loan in the face amount of $150.00, which included $6.00 investigation and loan fee. On April 30, 1966, less than four months after the first loan was made, a second loan was made in the amount of $270.00 which included an investigation fee of $10.80. On August 5, 1966, again less than four months, a third loan was made in the total amount of $396.00, and an investigation and loan fee of $15.84 was charged. On December 1, 1966, less than five months, the third loan was repaid and a new loan was executed in the amount of $540.00, which included $21.60 investigation fee. On March 10, 1967, the claim note was executed in the amount of $612.00, and included a $24.48 investigation or loan fee. On the occasion of the execution of each note no portion of the former investigation or loan fee was refunded. The record reflects proof concerning the services of the Loan Company which justified the maximum charge in connection with the first loan. The time intervals and the successive charges for the investigation or loan fee in the maximum amount of $4.00 per $100.00 on the next four loans establishes a prima facie case that the services rendered and expenses incurred by the Loan Company were excessive. The proof in the record by the Loan Company does not overcome that prima facie case. The Supreme Court of Tennessee in Koen v. State, 162 Tenn. 573, at page 581, 39 S.W.2d 283, held, when considering a Small Loan Act, that the Legislature could not authorize a lender to arbitrarily fix a maximum expense fee in addition to the interest on loans. In other cases the Supreme Court of Tennessee has held that "the transactions of small loan companies are open to inquiry for the purpose of determining whether or not the fees charged by the lender bear a reasonable relation to the service rendered or whether a charge was arbitrarily made with a view of evading the laws against usury." Family Loan Company of Nashville v. Hickerson, 168 Tenn. 36, 73 S.W. 2d 694, 94 A.L.R. 664, and Personal Finance Co. v. Hammack, 163 Tenn. 641, 645, 45 S.W.2d 528. Therefore, under the facts of this case the Court finds that the loan and investigation fee was partially usurious on its face and otherwise usurious because the record establishes that it was not for expenses or services rendered.

## INSURANCE

The Industrial Loan and Thrift Act provisions on insurance are set forth in T.C.A. § 45–2007(k), which allows lenders:

"To require at the expense of the borrower, insurance against the hazards to which the collateral used to secure the loan is subject, and upon failure of the borrower to supply such insurance, to procure the same and to accept, but not require, as collateral, insurance against the hazards of death or disability of a borrower; provided, however, that such insurance shall be obtained from a licensed agent and issued by an insurance company authorized to conduct such business in the state of Tennessee at rates approved by the department of insurance and banking of the state of Tennessee, and provided that the amount of the loan and the type of coverage bears a reasonable relation to the existing hazard or risk of loss."

This section requires a determination of facts to resolve whether or not the Loan Company in the instant case was in compliance therewith. The Court finds that an official of the Loan Company was also an agent of the insurance companies which wrote the insurance provided for in the loan note. Contracts with the insurance companies allowed the agent fifty percent (50%) of the premium as commission with a proviso that refunds of premiums to the policy holder (the

borrower) would, in turn, be refunded to the company. Therefore, the net commissions of the agent of the company were less than fifty percent (50%) of the total premiums charged. However, there was an obvious substantial profit to the Loan Company on these insurance transactions. This debtor was able to write little more than his signature and was unable to read the documents presented to him at the hearing. His testimony refutes the Insurance Application and Authorization Form which he signed at the time that he secured the loan. The debtor testified that he did not request credit life and accident and health insurance; that no official of the Loan Company made clear the conditions with respect to the insurance protection; and that he was not given an opportunity to obtain Fire Insurance with the agent of his choice.

The portion of the Industrial Loan and Thrift Act which allows a company to require hazard insurance to protect collateral is inapplicable to the case because the claim is an unsecured obligation. The Court finds that the Loan Company required all insurance provided for in the claim note.

This Court agrees with the opinion of Judge Parrott of the Tennessee Court of Appeals, expressed in Hagler v. American Road Insurance Co. and Ford Motor Credit Co., (unreported) wherein the Court affirmed the Chancellor who had disallowed insurance required by a Credit Company official while playing a dual role of an insurance company agent. Judge Parrott's opinion provides as follows:

> "In our opinion, to permit such a dual agency on the part of these defendants creates a bad situation. If such is not a violation of the law it is a practice which could lead only to trouble and misunderstandings and presents a breeding ground for fraud."

 On the facts of the instant case the Court is of the opinion that the insurance charged the debtor by the Loan Company was required of the debtor to obtain the loan. Therefore, the Loan Company acquired additional profit for the use of lending its money which constituted usury.

## CONCLUSION

It is the conclusion of this Court that the Referee in Bankruptcy had the power and duty to require of the Loan Company further proof concerning possible usurious phases of its claim note.

The Court is further of the opinion that the claim note was usurious on its face in that it provided for interest in excess of the amount authorized by the Legislature of Tennessee and that a portion of the loan or investigation fee charged was in excess of the amount allowable by the Industrial Loan and Thrift Act because it was partially in excess of the "principal amount" of the loan.

The Court is further of the opinion that the claim note was also usurious in that the remainder of the investigation or loan fee on the claim note was not a charge for services rendered and expenses incurred in the investigation of the debtor and that the insurance premiums included usurious profit because the insurance was required to be purchased to procure the loan as prohibited by the Industrial Loan and Thrift Act.

The Court is further of the opinion that the Loan Company did not have the right to withdraw its claim without prior approval of the Court under the facts of this case. The Loan Company does have the right to acknowledge that there is nothing due. Because the Loan Company did so acknowledge, the Trustee is authorized and directed to reflect that the claim of the Loan Company is satisfied by its own admission and the plan should be administered for the benefit of the other creditors who have filed proper claims.